MARTIN GINSBERG ET AL. *v.* JOHN FUSARO ET AL.
(14471)

PETERS, C. J., BORDEN, BERDON, NORCOTT and F. X. HENNESSY, Js.

Argued October 28, 1992—decision released April 27, 1993

*Daniel E. Ryan III,* with whom, on the brief, was *Laureen J. Vitale,* for the appellant-appellee (named plaintiff).

*Edward V. O'Hanlan,* with whom, on the brief, was *James A. Wade,* for the appellee-appellant (defendant Rita Fusaro).

BERDON, J. These appeals arise out of an action brought by the plaintiff dentists, Martin Ginsberg and Robert Miller, seeking to recover from the defendant Rita Fusaro[1] the reasonable value of dental services rendered to her. Although the case started as a collection case, it developed into a dental malpractice case when Fusaro filed a counterclaim alleging that Ginsberg and Miller had been negligent in performing the dental services. The jury found the issues for Fusaro

---

[1] John Fusaro was also named as a defendant in the plaintiffs' complaint. The jury returned a verdict in favor of John and Rita Fusaro on the complaint; however, that verdict is not at issue in this appeal.

on both the complaint and the counterclaim, and awarded Fusaro $5000 damages against Miller and "zero" damages against Ginsberg. The verdicts were accepted by the court without objection and the jury was dismissed.

Fusaro subsequently filed separate motions to set aside the verdicts against Ginsberg and Miller, or in the alternative, for a new trial. The trial court granted Fusaro's motion to set aside the verdict against Ginsberg as to liability and damages, but denied the motion to set aside the verdict against Miller. Ginsberg filed an appeal in the Appellate Court upon the granting of Fusaro's motion to set aside the verdict. Fusaro then filed a cross appeal.[2] While these appeals were pending, Ginsberg filed a motion to correct the jury verdict, which was denied by the trial court. Ginsberg subsequently amended his appeal in order to challenge the denial of his motion to correct.

The jury could reasonably have found the following facts. In 1979, Fusaro's regular dentist, Miller, extracted from her mouth a decayed tooth that he later replaced with a permanent bridge. Throughout the hour long process of permanently cementing the bridge to her natural teeth, Miller continually admonished Fusaro to keep her mouth open. Miller leaned on her and pulled her lower jaw down with his hand to keep her mouth open. Miller also improperly ground down her teeth in order to adjust her bite—that is, the angle and manner in which the upper and lower teeth meet. During the six weeks after the bridge was installed, Fusaro called Miller several times because she had been experiencing great pain, but was told that her symptoms were not out of the ordinary and would abate in time.

---

[2] We transferred the appeals to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

After the six week period, Miller referred Fusaro to his partner, Ginsberg, who specialized in a disorder of the temporomandibular joint commonly referred to as "TMJ." The temporomandibular joint is the juncture where the jaw joins the skull. According to Fusaro, Ginsberg diagnosed her condition as TMJ. Ginsberg treated Fusaro by prescribing pain medication and preparing a splint for her to wear on her teeth. The splint, however, was not delivered to her for another six weeks. Shortly afterward, Fusaro discontinued treatment with Ginsberg.[3]

At trial, Fusaro presented two dentists as expert witnesses, Brendan Stack and Barry Rudolph, both of whom had treated her for TMJ. Both experts testified that Miller's rough treatment of Fusaro and negligent adjustment of the bite had caused her to develop TMJ. They also opined that Miller was negligent in having failed to refer Fusaro to a TMJ specialist for immediate treatment, and that the delay diminished her chances of recovering from TMJ and resulted in permanent injury. Miller denied that there were any problems relating to the fixation of the bridge or that he was negligent in the adjustment of Fusaro's bite.

Stack and Rudolph also testified that Ginsberg was negligent by allowing an additional six week delay before applying the splint, further diminishing her chances for full recovery from TMJ. Ginsberg denied that Fusaro had TMJ or that he was negligent. He testified that when he examined and treated Fusaro, she had been suffering from myofacial pain dysfunction, which is a muscle inflammation and spasm.

---

[3] After discontinuing treatment with Ginsberg, Fusaro consulted Brendan Stack, a TMJ specialist. She then consulted other specialists and underwent numerous surgical procedures to correct the problem. Stack testified at trial that Fusaro's decision to undergo surgery was appropriate, but he also suggested that the treatment was at least in part cosmetic to correct her preexisting overbite.

## I

### THE VERDICT AGAINST GINSBERG

On appeal, the parties raise three issues involving the verdict against Ginsberg. First, Ginsberg claims that the trial court should not have set aside the verdict on the counterclaim, which found the issues in favor of Fusaro, but awarded zero damages. Alternatively, Ginsberg claims that the verdict should have been corrected. Finally, Fusaro claims that the verdict against Ginsberg should have been set aside as to damages only, but not as to liability.

The following verdict form was submitted to and completed by the jury[4] on Fusaro's counterclaim for damages resulting from Ginsberg's alleged malpractice:

"In this case, the jury finds the issues for the defendant, Rita Fusaro and against the plaintiff Martin Ginsberg, in accordance with the following calculation:

"1. Fair, just and reasonable compensation for the defendant's injuries, if any: 0 dollars;

"2. The amount, if any, that #1 should be reduced by reason of defendant, Rita Fusaro's failure to minimize damages: 0 dollars.

"Subtract #2, if any from #1, if any: Verdict 0 dollar damages."

This verdict form was signed by the foreperson of the jury, accepted in open court after two readings and recorded by the trial court.

---

[4] The jury completed all blank portions of the verdict form by inserting zeros. Thus, they completed the verdict form to allow (1) zero as the fair, just and reasonable compensation for the defendant's injuries, (2) zero as Fusaro's failure to minimize damages, and (3) zero as the final verdict.

Ruling on Fusaro's motion to set aside the verdict against Ginsberg, the trial court concluded, in light of its instructions, that the verdict finding the issues of negligence, causation and damages in favor of Fusaro, but awarding zero damages, was inconsistent. We agree with the trial court's ruling.

We have often held that "[t]he decision to set aside the verdict entails the exercise of a broad legal discretion that, in the absence of clear abuse, we shall not disturb. *O'Brien* v. *Seyer,* [183 Conn. 199, 208, 439 A.2d 292 (1981)]." *Palomba* v. *Gray,* 208 Conn. 21, 24, 543 A.2d 1331 (1988); *American National Fire Ins. Co.* v. *Schuss,* 221 Conn. 768, 607 A.2d 418 (1992); *State* v. *Hammond,* 221 Conn. 264, 270, 604 A.2d 793 (1992). In our review of the exercise of this discretion, we accord great weight to the trial court's decision; *Labatt* v. *Grunewald,* 182 Conn. 236, 240–41, 438 A.2d 85 (1980); so long as the trial court's exercise of its discretion does not infringe on the constitutional rights of the litigants to have issues of fact determined by a jury. *Seals* v. *Hickey,* 186 Conn. 337, 350, 441 A.2d 604 (1982). This right is an "obviously immovable limitation on the legal discretion of the court to set aside a verdict . . . ." *Camp* v. *Booth,* 160 Conn. 10, 13, 273 A.2d 714 (1970).

The trial court's exercise of its discretion in this case finds support in *Malmberg* v. *Lopez,* 208 Conn. 675, 681, 546 A.2d 264 (1988), in which we held that a verdict finding the issues for the party seeking to recover damages but awarding zero damages was inherently ambiguous. In the present case, the trial court instructed the jury that a finding for Fusaro on the issue of liability included the issues of negligence, causation and damages.[5] Under these circumstances, we can only specu-

---

[5] In its memorandum of decision, the trial court stated the following: "The Court agrees that the verdict form, as amended by counsel, is perhaps not

late as to why the jury failed to award damages in her favor; therefore, the jury's verdict creates an ambiguity.

Ginsberg argues that Fusaro should be estopped from claiming that the verdict should be set aside as inconsistent because she failed to assert that claim before the verdict was accepted and recorded and the jury dismissed. Although it is clear that the trial judge has the authority to return the jury for reconsideration of the verdict under General Statutes § 52-223,[6] we have never held that a party is obliged to request reconsideration as a prerequisite to challenging the validity of the verdict on a motion to set aside the verdict. Nor is such a condition precedent set forth in the rules of court[7]

---

a model of clarity. The Court further agrees with counsel that the 'issues' referred to in that verdict form and as defined by the Court in its charge to the jury, included issues of negligence, causation and damages. The jury would seem to have found those 'issues' for the defendant when it rendered a defendant's verdict on the counterclaim verdict form. Having found negligence, proximate cause, and damages, the jury in then awarding zero damages entered a verdict that this court concludes must be set aside.''

The court instructed the jury as follows: "To prevail on her counterclaim, Mrs. Fusaro must prove by a fair preponderance of the evidence . . . whether direct or circumstantial, that either or both of the dentists were negligent and that that negligence was the proximate cause of her injury, uninterrupted by any intervening cause. That sums up liability.''

[6] General Statutes § 52-223 provides: "The court may, if it judges the jury has mistaken the evidence in the action and has brought in a verdict contrary to the evidence, or has brought in a verdict contrary to the direction of the court in a matter of law, return them to a second consideration, and for the same reason may return them to a third consideration. The jury shall not be returned for further consideration after a third consideration.''

[7] Practice Book § 326 provides in part: "Unless otherwise provided by law and except in such cases in which the court has continuing jurisdiction, any civil judgment or decree rendered in the superior court may not be opened or set aside unless a motion to open or set aside is filed within four months succeeding the date on which it was rendered or passed. The parties may waive the provisions of this paragraph or otherwise submit to the jurisdiction of the court.''

or the statutes,[8] which allow either party to move, within certain time limitations, to set aside the verdict. The power to return the jury to reconsider its verdict a second and a third time must be left to the discretion of the trial court. *Szlinsky* v. *Denhup,* 156 Conn. 159, 165, 239 A.2d 505 (1968). Indeed, we have made it clear that the trial court has the inherent power to set aside the verdict even when no motion by either party is made. *Belchak* v. *New York, N.H. & H. R. Co.,* 119 Conn. 630, 637, 179 A. 95 (1935). Accordingly, we reject Ginsberg's claim.

Several months after the trial court set aside the verdict against Ginsberg, and while these appeals were pending, Ginsberg sought to have the trial court vacate its order setting aside the verdict and correct the original jury verdict. Ginsberg claimed that the jury was unanimous in its decision to render a verdict in favor of Fusaro and against Miller and Ginsberg for a total of $5000, but made an error in filling out the verdict form. Ginsberg predicated this claim on identical typewritten sworn affidavits from the jurors that had been solicited by Ginsberg and that stated in relevant part: "After deliberation with the other jurors . . . it was my decision and the unanimous decision of the jury, that Rita Fusaro had proved that fair, just and reasonable compensation for the damages she had incurred as a result of her treatment from Dr. Robert Miller and Dr. Martin Ginsberg, was the amount of $5,000. The amount of $5,000 represents the total amount of damages that I and the other jurors decided by unanimous decision was fair, just and reasonable compensation for

---

[8] General Statutes § 52-225 provides: "The court shall render judgment on all verdicts of the jury, according to their finding, with costs, unless the verdict is set aside; and in all cases where judgment is rendered otherwise than on a verdict, in favor of the plaintiff, the court shall assess the damages which he shall recover."

428

all damages to Rita Fusaro which were proximately caused by either Dr. Robert Miller or Dr. Martin Ginsberg. Although Rita Fusaro incurred expenses and suffered damages in an amount exceeding $5,000, I and the other jurors decided by unanimous decision that Rita Fusaro had not proved [that] damages beyond $5,000 were proximately caused by either Dr. Robert Miller or Dr. Martin Ginsberg." The trial court denied Ginsberg's motion to correct the verdict, noting that even if the affidavits could be considered, the jurors' intentions were still ambiguous. The "$5,000 could be $5,000 against Dr. Miller and nothing against Dr. Ginsberg, which is exactly the verdict disapproved by this court . . . . We simply do not know."

On appeal, Ginsberg argues for the first time that the jury made a clerical error by failing to complete the verdict form in favor of him on the counterclaim. He argues: "Given that $5,000 was awarded [Fusaro] as against . . . Miller, an award of zero damages against . . . Ginsberg is a clear finding that [Fusaro] failed to prove any other damages proximately caused by Dr. Ginsberg. Such a finding, demonstrated by the affidavits and consistent with the evidence presented at trial, fully explains any perceived ambiguity or inconsistency in the verdict. In this circumstance, as a matter of law the jury's verdict should have been a verdict in favor of Ginsberg, since the jury found, as instructed, that [Fusaro] should not prevail since no injuries were proved to have been proximately caused by [Dr. Ginsberg]. The jury's failure to use the appropriate form to announce such a verdict, is simply due to a clerical error of a formal nature, which should be corrected to reflect the jury's true intent and prevent an injustice."

This claim is untenable. Even if we were to consider the affidavits of the jurors, which we are not inclined

to do,[9] they fly in the face of the claim. According to the affidavits, the jurors intended to find liability on the counterclaim against both Ginsberg and Miller and award damages of $5000 on a joint and several basis. A judgment of $5000 against only one dentist does not satisfy that intention.

Since this is not a case of mere clerical error whereby the jury completed the wrong verdict form, it is clear that the verdict could be corrected in this case only on the basis of the trial court examining the jurors' mental processes in rendering the verdict. We have made it clear that the rule that prohibits the examination of the jurors' mental process[10] "excludes, as immaterial, evidence as to the expressions and arguments of the jurors in their deliberations and evidence as to their own motives, beliefs, mistakes and mental operations generally, in arriving at their verdict. McCormick, Evidence (2d Ed.) § 68, p. 148." (Internal quotation marks omitted.) *Aillon* v. *State,* 168 Conn. 541, 550, 363 A.2d 49 (1975); see also 1 C. McCormick, Evidence (4th Ed.) § 68, p. 260.[11]

---

[9] See *Josephson* v. *Meyers,* 180 Conn. 302, 310–11, 429 A.2d 877 (1980) (an " 'affidavit to avoid the verdict *may not be received to show any matter which does essentially inhere in the verdict itself, as that the juror did not assent to the verdict;* that he misunderstood the instruction of the court; the statements of the witnesses or the pleadings in the case; that he was unduly influenced by the statements or otherwise of his fellow jurors, or mistaken in his calculations or judgment, or other matter resting alone in the juror's breast' ") (emphasis in original); see also id., 310–12, for subsequent discussion relative to *Aillon* v. *State,* 168 Conn. 541, 363 A.2d 49 (1975).

[10] "[T]he various policies behind the rule were to give stability to the verdicts of jurors, to minimize the temptation for jury-tampering, and to prevent inquisition into the arguments and reasoning of the jurors that go into their ultimate verdict." *Aillon* v. *State,* 168 Conn. 541, 550, 363 A.2d 49 (1975); *State* v. *Freeman,* 5 Conn. 348, 351–52 (1824).

[11] "Accordingly, it is today universally agreed that on a motion to set aside a verdict and grant a new trial the verdict cannot be affected, either favorably or unfavorably, by the circumstances: that one or more jurors misunderstood the judge's instruction; or were influenced by an illegal paper

Finally, Fusaro claims that the verdict should have been set aside as to damages only and that therefore the trial court should have ordered a hearing in damages. We disagree. *Malmberg* v. *Lopez*, supra, 681–82, held that "[a]n explicitly stated award of *zero* damages differs from an award of nominal damages. A plaintiff's verdict with a nominal damage award ordinarily suggests that the jury found that despite the defendant's liability, the plaintiff failed to prove damages. . . . The jury's intent in rendering a plaintiff's verdict with zero damages . . . is far less clear." (Citations omitted; emphasis in original.) Accordingly, we affirm the trial court's decision to set aside the verdict against Ginsberg as to both liability and damages.

## II

### THE VERDICT AGAINST MILLER

Fusaro claims that the trial court should have set aside the verdict of $5000 against Miller or ordered an additur because the verdict was inadequate. Although the $5000 verdict is arguably inadequate as a matter of law when compared to Fusaro's claims that, as a result of Miller's negligence, she incurred medical expenses of $56,859.74, experienced great pain and suffering, and sustained a permanent injury, her claims for an additur cannot be sustained.

The trial court's refusal to set aside the verdict or to order an additur "is entitled to great weight and

or by an improper remark of a fellow juror; or assented because of weariness or illness or importunities; or assented under an erroneous belief that the judge would use clemency or have the legal right to vary the sentence; or had been influenced by inadmissible evidence; or had decided upon grounds which rendered newly discovered evidence immaterial; or had omitted to consider important evidence or issues; or had miscalculated accounts by errors of fact or of law; or had by any other motive or belief been led to their decision. (Emphasis omitted.) 8 Wigmore (McNaughton Rev.), Evidence § 2349, and cases cited therein." (Internal quotation marks omitted.) *Aillon* v. *State,* 168 Conn. 541, 550 n.3, 363 A.2d 49 (1975).

every reasonable presumption should be given in favor of its correctness." *Kalleher* v. *Orr,* 183 Conn. 125, 127, 438 A.2d 843 (1981). "In reviewing the action of the trial court in denying the motions for additur and to set aside the verdict, our primary concern is to determine whether the court abused its discretion and we decide only whether, on the evidence presented, the jury could fairly reach the verdict they did. *Rood* v. *Russo,* 161 Conn. 1, 3, 283 A.2d 220 (1971)." *Fabrizio* v. *Smith,* 164 Conn. 385, 386, 321 A.2d 467 (1973). The trial court's decision is significant because "the trial judge has had the same opportunity as the jury to view the witnesses, to assess their credibility and to determine the weight that should be given to their evidence. . . . Moreover, the trial judge can gauge the tenor of the trial, as we, on the written record, cannot, and can detect those factors, if any, that could improperly have influenced the jury. . . . The focus of our inquiry is the action of the trial court in setting aside the verdict." (Citations omitted.) *Palomba* v. *Gray,* supra, 24–25. Our task is to determine whether the "total damages awarded falls somewhere within the necessarily uncertain limits of fair and reasonable compensation in the particular case . . . ." *Briggs* v. *Becker,* 101 Conn. 62, 66–67, 124 A. 826 (1924); *Nichols* v. *Coppola Motors, Inc.,* 178 Conn. 335, 349, 422 A.2d 260 (1979).

In the present case, the trial court denied the motion to set aside the verdict without a memorandum of decision. Fusaro never requested an articulation. Accordingly, we do not have the benefit of the basis for the trial court's denial. It is clear that "[w]here the factual basis of the court's decision is unclear, proper utilization of the motion for articulation serves to dispel any such ambiguity by clarifying the factual and legal basis upon which the trial court rendered its decision, thereby sharpening the issues on appeal. It remains the appel-

lant's responsibility to secure an adequate appellate record, and under normal circumstances we will not remand a case to correct a deficiency the appellant should have remedied." (Internal quotation marks omitted.) *Berlin* v. *Commissioner of Revenue Services,* 207 Conn. 289, 295, 540 A.2d 1051 (1988). Moreover, it should be noted that the issue of whether Fusaro's damages were causally related to the negligence of Miller or were incurred for the cosmetic purpose of correcting Fusaro's preexisting overbite was hotly contested.[12] On the basis of the scant record before us, and the dispute as to whether the damages were causally related to the TMJ, we summarily affirm the trial court's refusal to order an additur and its denial of the motion to set aside the verdict against Miller.

In sum, we affirm the trial court's decision granting Fusaro's motion to set aside the verdict against Ginsberg as to both liability and damages, the denial of Ginsberg's motion to correct the verdict against him, and the denial of Fusaro's motion to set aside the verdict against Miller.

The decision of the trial court is affirmed and the case is remanded for further proceedings consistent with this opinion.

In this opinion the other justices concurred.