L. LYNNE HALL *v.* STANLEY BERGMAN ET AL.
(AC 26856)
(AC 26858)
(AC 27011)

McLachlan, Harper and Lavine, Js.

Argued November 16, 2007—officially released April 1, 2008

*Susan M. Phillips*, for the appellant in AC 26856 and the appellee in AC 26858 and AC 27011 (plaintiff).

*Rene Gerard Martineau*, for the appellant in AC 26858 and AC 27011 (defendant Stuart Cohn) and for the appellees in AC 26856 (substitute defendant Betsey Henley Cohn et al.).

*Opinion*

LAVINE, J. In these appeals, the plaintiff, L. Lynne Hall, appeals from the judgment rendered, following a jury trial, in favor of the defendant Rhoda Cohn,[1] and the defendant Stuart Cohn[2] appeals from the judgment to the extent that it set aside the verdict as to him and

---

[1] Rhoda Cohn died during the pendency of these appeals, and Betsey Henley Cohn and William C. G. Swift, Jr., executors of the estate of Rhoda Cohn, were substituted as defendants. See General Statutes § 52-599. In this opinion, we refer to them as the executors.

[2] Stuart Cohn filed two appeals. He first appealed to our Supreme Court, but realizing that such an appeal was improper, he filed an appeal in this court (AC 26858). Our Supreme Court transferred the appeal improperly filed there to this court, where it was renumbered (AC 27011). Stuart Cohn's appeals have been consolidated and are redundant.

ordered a new trial.[3] In her appeal (AC 26856), the plaintiff claims that (1) there was insufficient evidence to establish the special defense of reliance on the advice of counsel with respect to the vexatious litigation count and (2) the court improperly failed to set aside the verdict in favor of Rhoda Cohn. In his appeals (AC 26585 and AC 27011), Stuart Cohn claims that the court improperly consulted handwritten notations on jury forms when setting aside the verdict as to him and ordered a new trial. We affirm the judgment of the trial court.

The following procedural history is relevant to the parties' appeals. The plaintiff commenced this action on December 6, 2000, against Stanley Bergman, trustee, Rhoda Cohn, Stuart Cohn and The Joel Cohn Revocable Trust (trust).[4] Bergman and Rhoda Cohn were trustees of the trust, and Stuart Cohn is the beneficiary of the trust. At all times relevant, the trust was the owner of a condominium known as 16-18-20 Temple Court in New Haven (condominium), which is handicapped accessible and equipped. The second amended complaint, which is the operative complaint, contained five counts. Count one alleged unjust enrichment against the defendants; count two alleged vexatious litigation against Rhoda Cohn; count three alleged negligent infliction of emotional distress and physical harm against the defendants; and count four alleged intentional infliction of emotional distress and physical harm against the defendants. Count five alleged a violation of the Connecticut Unfair Trade Practices Act; General Statutes § 42-110a et seq.; but that count was withdrawn

---

[3] Stuart Cohn's appeals were filed pursuant to General Statutes § 52-263, which provides that an appeal may be filed after a trial court's granting of a motion to set aside a verdict.

[4] The plaintiff withdrew the claims against Bergman prior to trial and presented no evidence against the trust at trial. Bergman and the trust are not parties to these appeals. In this opinion, we refer to Rhoda Cohn and Stuart Cohn as the defendants.

at trial. The plaintiff sought damages of at least
$3,708,000.

The factual allegations of the plaintiff's complaint
follow.[5] In May, 1995, Rhoda Cohn approached the
plaintiff and informed her that Stuart Cohn, her son, and
his wife were divorcing and vacating the condominium.
Because the condominium had been constructed to
accommodate a person with physical impairments, the
plaintiff alleged that Rhoda Cohn thought that the con-
dominium would be suitable for the plaintiff, who suf-
fered from a physical disability. The plaintiff alleged
that in August, 1995, she entered into a long-term lease
agreement for the condominium with Stuart Cohn, who
was acting as agent for the trust. Approximately two
years later, Rhoda Cohn, acting as trustee, decided to
sell the condominium and engaged Stuart Cohn to
approach the plaintiff with an offer to purchase the
condominium. According to the plaintiff's allegations,
when she refused to purchase the condominium, Rhoda
Cohn instituted a summary process action against her,
which was dismissed. Thereafter, Stuart Cohn com-
menced a second summary process action to evict the
plaintiff from the condominium. The plaintiff alleged,
among other things, that Stuart Cohn threatened her,
violated court orders with respect to her, sexually
assaulted her, sabotaged assistive technology devices,
misappropriated her personal and professional identity,
and in the summer of 1999 permitted a family of a
different race to live in the condominium to compel the
plaintiff to purchase the premises. The plaintiff also
alleged that the defendants had been unjustly enriched
because she had made certain improvements to the
condominium.[6]

---

[5] In ruling on the plaintiff's posttrial motions, the court stated that it
concurred with the jury's verdict as to damages "based on its own observa-
tions of the trial and evaluation of the witnesses. In general, the court did
not find the plaintiff to be a credible witness, either on liability or damages."

[6] During trial, the plaintiff's counsel conceded that that there was no long-
term lease for the condominium. The evidence at trial demonstrated that

The jury initially returned verdict forms that did not comply with the court's instructions. The typewritten form concerning Rhoda Cohn stated: "We, the jury, find in favor of defendant Rhoda Cohn in the above-captioned case." It also contained the following words in script:

"Count One: Unjust Enrichment

"Count Two: Vexatious Litigation

"~~Count Three: Negligent Infliction of Harm.~~"[7]

The jury also initially returned two verdict forms concerning Stuart Cohn. One of the forms contained the following typewritten statement: "We, the jury, find

the plaintiff had a month-to-month lease to reside in a portion of the condominium and that Stuart Cohn maintained possession and control over the remainder of the condominium. In the summer of 1999, Stuart Cohn permitted family friends, who happen to be African-American, to live in the condominium during a heat wave because they had no air conditioning. The summary process action brought by Rhoda Cohn was dismissed. Thereafter, Stuart Cohn brought a summary process action against the plaintiff, which was resolved by way of a negotiated settlement.

The jury also heard evidence that the trustees decided to sell the condominium because it was too large and expensive for the family's needs at the time. Rhoda Cohn sought to evict the plaintiff in order to make the condominium saleable but told the plaintiff that she was free to purchase it. The plaintiff did not have the means to do so. The plaintiff claimed that Stuart Cohn took her dog from her, but the police report indicates that Stuart Cohn called the police because the dog was without food and water.

There was evidence that the plaintiff had significant financial problems, a celibate marriage to a Roman Catholic priest, had been shot at while leaving the Yale Law School and had been run off an interstate highway, either Interstate 84 or Interstate 91. It was unclear whether she was accusing an assistant attorney general for the state of Maryland with respect to the gunshots and traffic incident. Stuart Cohn testified that at times he did not use good judgment with respect to the plaintiff but that he never threatened her, tampered with her possessions or damaged her equipment, and he denied her other allegations of wrongdoing. Moreover, the plaintiff's psychiatrists questioned her veracity, openness and candor. In its memorandum of decision regarding the posttrial motions, the court referred to the plaintiff's testimony about "a multitude of stressful and sometimes traumatic events in her life, all of which were independent of [Stuart Cohn's] conduct . . . ."

[7] The line containing count three had been crossed out.

in favor of defendant Stuart Cohn in the above cap-
tioned case," but it also contained the handwritten
words, "Count One: Unjust Enrichment." The second
verdict form contained typewritten language with hand-
written figures: "We, the jury, find that defendant Stuart
Cohn is liable to plaintiff L. Lynne Hall and award dam-
ages as follows: 1. Economic damages $  0.00  2. Non-
economic damages $ 0.00  3. Total damages (1) plus
(2) 0.00." The verdict form also contained the following
handwritten language:

"Count Three: Negligent Infliction of harm. (a), (d)

"Count Four: Intentional Infliction of harm (a), (d)"

Following a sidebar conversation with counsel, the
court informed the jury that the verdict forms did not
comply with the court's instructions, which were to
return one verdict with respect to each defendant.[8] The
court asked the foreperson if he understood the instruc-
tions, and the foreperson responded that he did. The
court then sent the jury back into the jury room with
a clean set of jury forms and instructions to write out
any questions the jury may have with respect to com-
pleting the verdict forms.

Thereafter, the jury returned its verdict a second time.
The jury found in favor of Rhoda Cohn. It found Stuart
Cohn liable to the plaintiff but awarded neither eco-
nomic nor noneconomic damages. The court accepted
the jury's verdict. Counsel for the plaintiff stated that
the verdict with respect to Stuart Cohn was inconsistent
because the jury found in favor of the plaintiff but
awarded her no damages. He stated that the plaintiff
was entitled to nominal damages, at least. The court
ordered the plaintiff to submit a motion to that effect

[8] No party claims that it was improper for the court to instruct the jury
to return for further deliberations. See Practice Book § 16-17.

within ten days. The defendants' counsel also made an oral motion for a mistrial, which the court denied.

On May 27, 2005, the plaintiff filed a motion to set aside the verdict as to Rhoda Cohn. The court denied the motion. The plaintiff also filed a motion for additur and, in the alternative, a motion to set aside the verdict and for a new trial as to Stuart Cohn. On July 6, 2006, the court ordered an additur of $2000, which the plaintiff rejected.[9] On August 3, 2005, the court set aside the jury's verdict as to Stuart Cohn and ordered a new trial as to both liability and damages. These appeals followed. Additional facts will be discussed as necessary.

## I

### AC 26856

In her appeal, the plaintiff claims that the court improperly (1) gave an instruction on the special defense of reliance on the advice of counsel and (2) failed to declare a mistrial or set aside the verdict as to Rhoda Cohn. We disagree.

### A

The plaintiff's first claim is that the court improperly gave an instruction on the advice of counsel special defense asserted by Rhoda Cohn in response to the plaintiff's claim of vexatious litigation[10] because there was insufficient evidence to warrant the giving of such a charge.[11] The executors[12] argue that the claim is not

[9] Stuart Cohn did not object to the additur.

[10] Rhoda Cohn alleged by way of a second special defense to the second count of the plaintiff's complaint: "The decision to initiate and the manner in which the Summary Process Actions were pursued in good faith and based upon the legal advice of counsel and the undersigned defendants had no reason to believe such advice was biased or improper in any way or manner."

[11] The plaintiff notes that the substance of the charge given was correct legally.

[12] See footnote 1.

reviewable because the plaintiff did not preserve the claim at trial. We agree with the executors.

In her principal brief, the plaintiff failed to note that she had not preserved the claim at trial, and she did not request that the claim be reviewed pursuant to any doctrine in exception to the preservation rule. In their brief, the executors note that the plaintiff failed to preserve the issue for appeal by submitting a request to charge on the issue of advice of counsel or by objecting to the charge as given. See Practice Book § 16-20. They also note that the plaintiff failed to ask for a directed verdict on the issue of the special defense.[13] The executors opine that this court's review is limited to the plain error rule.[14] See Practice Book § 60-5.

In her reply brief, the plaintiff acknowledges that the claim was not preserved pursuant to our rules of practice but asks this court to consider her claim pursuant to the plain error doctrine.[15] She concedes, however,

---

[13] At the conclusion of the presentation of evidence, the court asked counsel if motions for directed verdicts were being considered. There was an agreement between the parties not to pursue motions for a directed verdict.

[14] This court repeatedly has stated that plain error is not a rule of reviewability but a rule of reversal reserved for those cases in which the trial court's error is so obvious that it affects the integrity of and the public's confidence in the judicial system. See *State* v. *Smith*, 275 Conn. 205, 239–40, 881 A.2d 160 (2005). The situation presented here is not one of those cases.

[15] In her reply brief, the plaintiff made several arguments in an effort to demonstrate that the claim, in fact, had been preserved at trial. Her arguments are fact based, and their novel positions are not supported by citation to legal authority. First, the plaintiff argued that this court should overlook her failure to raise plain error in her principal brief because her appellate counsel was not trial counsel, and the case on which her claim is founded was not decided until after judgment in this case was rendered. Counsel is presumed to be qualified for the representation undertaken.

The plaintiff further argued that it was not necessary for trial counsel to do more than what he did to preserve the issue regarding the advice of counsel instruction for appellate review. In the supplemental request to charge she filed after Stuart Cohn requested that the court give an instruction on the advice of counsel special defense, the plaintiff asked the court to give an instruction on vexatious litigation. She requested that the court charge that "[o]nce you have determined that the plaintiff has met her burden of proof on the Vexatious Litigation Claim, you may then move on

that it is the policy of our appellate courts not to consider plain error when it is raised for the first time in a reply brief. See, e.g., *Embalmers' Supply Co.* v. *Giannitti,* 103 Conn. App. 20, 61, 929 A.2d 729, cert. denied, 284 Conn. 931, 934 A.2d 246 (2007). The plaintiff's concession is appropriate, and for that reason, we decline to review the claim.

## B

The plaintiff's second claim is that the court improperly denied her motion to set aside the verdict in favor of Rhoda Cohn on the basis of inconsistent jury forms. We disagree.

The following facts are relevant to the plaintiff's claim. The jury returned seriatim two sets of verdict

to the issue of damages." She concedes that "[n]otably absent is the statement 'and the advice of counsel defense is inapplicable.' " The supplemental request to charge, the plaintiff argues, was sufficient to preserve the issue for review. The argument overlooks the purpose of a request to charge. See Practice Book § 16-23.

The plaintiff's claim on appeal is that there was insufficient evidence to warrant the court's instructing the jury on the advice of counsel special defense. In order to preserve that claim, the plaintiff had to bring it to the court's attention by either objecting to an instruction requested by the opposing party or by objecting to the instruction given by the court immediately after it was given. This permits the court to review the charge and make modifications, if necessary, in order to avoid instructional error. This policy reason also underscores why her claim of instructional error was not preserved by the motion to set aside the verdict as to Rhoda Cohn in which the plaintiff stated "[t]here was no evidence in support of the special defense of [advice] of counsel because there was no reliance."

Moreover, a charge on a point of law is to be given if there is sufficient evidence to warrant it. See, e.g., *State* v. *Montanez,* 277 Conn. 735, 747–48, 894 A.2d 928 (2006). In her brief, the plaintiff has not argued that there was no evidence on the advice of counsel special defense. Indeed, the record reflects that Rhoda Cohn and Stuart Margolis, the attorney who represented her in the summary process action, both testified about the matter. The substance of the plaintiff's claim, therefore, is not that the court's instruction was not warranted but that she disagrees with the weight of the evidence. A weight of the evidence argument as to whether an instruction was warranted, however, is not one that will support a claim that the court improperly instructed the jury.

forms. After the jury returned its first set, the court addressed the jury:[16] "Ladies and gentlemen, I've examined your verdict forms. They are not in compliance with the court's instructions, which require that in the case of each defendant, you are to return one verdict. So, for example, in the case of Rhoda Cohn, you are to return either a plaintiff's verdict form or a defendant's verdict form. I have—we will mark this as court exhibits. What I have here are four verdict forms, three are filled out. It's not clear as to what exactly your verdict is, so I'm going to send you back and give you clean sets. Mister foreman, do you think—do you understand what the court is asking?" The foreman responded in the affirmative. The court reminded the jury that its instructions were in the copy of the court's charge, which the jury had in the jury room. The court then stated: "So, I'll ask the jury to retire again to deliberation, and we will provide you a clean set of all four verdict forms, and you are to return only two. One in the case of each defendant."

Counsel then approached the bench for a sidebar conference. Once again, the court instructed the jury. "Thank you for your patience, ladies and gentlemen. Let me just add two things. First, we are just going to mark these for exhibits, and then we will send them back to the jury room. Second, if you have any specific

---

. [16] In its principal charge to the jury, the court gave the following instruction with regard to the verdict forms: "There is a plaintiff's verdict form and a defendant's verdict form in the case against Rhoda Cohn and the same in the case against Stuart Cohn. The process is almost self-explanatory. In the event that, after your deliberations, you find liability against both defendants on any of the counts, you should fill out both plaintiff's verdict forms. In the event that you find liability against one defendant on any of the counts but not the other defendant, you should fill out one plaintiff's verdict form and one defendant's verdict form, as applicable. In the event that you find no liability against either defendant on any of the counts, you should fill out both defendants' verdict forms. When you return to court with a verdict, you will be asked to hand the clerk the two verdict forms that you have filled out."

question about how to fill out the verdict form, given the conclusions you've reached, you should put those in writing, and I'll try to address them as specifically as possible. I'm not saying that you have to do that, but I'm just reminding you that you may do that if you wish. So, I'll ask the jury to retire, and we'll stay in session for just a minute." The first set of jury forms, which the court did not accept, were marked as court exhibit five.

The court then addressed counsel, stating, "I've discussed the procedure with counsel at the sidebar, and I think we're in agreement that what I asked the jury to do is appropriate." Both counsel agreed with the court's statement. Shortly thereafter, the jury returned a verdict in favor of Rhoda Cohn and a verdict in favor of the plaintiff with regard to Stuart Cohn but awarding the plaintiff no economic or noneconomic damages. The court accepted the verdicts on the basis of the jury poll and excused the jury.

Immediately after the jury was dismissed, counsel for the plaintiff stated that the verdicts were inconsistent and that the plaintiff was entitled to nominal damages. The court agreed to permit the plaintiff to file a written motion for nominal damages.[17] Thereafter, counsel for the plaintiff made an oral motion for a

---

[17] Immediately after the jury was excused, the following colloquy occurred between the court and counsel:

"[The Plaintiff's Counsel]: I think nominal damages have to be addressed either by the court or by the jury. . . .

"[The Defendants' Counsel]: . . . I believe that the jury rendered its fair verdict—and I think it could be understood that counsel wants to ask His Honor for a nominal award. I have no objection to that, obviously.

"The Court: With his asking or with the court awarding.

"[The Defendants' Counsel]: With his asking or with the court's awarding. . . .

"The Court: So, I'll entertain a motion for nominal damages from the plaintiff and consider it."

The plaintiff, thereafter, filed a motion to set aside the verdict as to Rhoda Cohn on the ground that the verdict was against the weight of the evidence.

mistrial. Counsel for the defendants stated that there was no basis for a mistrial. The court ruled as follows: "The request for a mistrial is denied. There's nothing inconsistent in the jury's verdict, the jury was instructed to decide the case of each defendant separately; they have done so. We clearly contemplated in the instructions that we agreed to that the jury could render a plaintiff's verdict in one case and a defendant's verdict in another.

"Furthermore, to the extent that counsel may be referring to the fact that the jury had apparently found liability against Mr. Cohn but no damages, or did so in their ultimate verdict, that is consistent with their first verdict forms, which seem to suggest that that's what they wanted to do. It's also in accordance with the instructions of the court, that the parties agreed upon, that it is the plaintiff's burden to prove damages, and that means two things. One, that she was in fact damaged, she suffered damages, and, two, that the damages were the proximate cause of any wrongdoing by [Stuart Cohn]. We don't know which of the two the jury concluded, but either conclusion would be a permissible basis for a finding that [Stuart Cohn] might have been liable but no damages should be awarded. So, at this point, at least, I see no basis for a mistrial, and the motion is denied."

The essence of the plaintiff's claim on appeal is that the jury was confused by the verdict forms and that the court's instruction with regard to them did not clarify matters. After the court declined to accept the jury's first set of verdict forms, the court consulted with counsel on the way to proceed. Not only did the plaintiff's counsel voice no objection to the manner in which the court instructed the jury and sent it back for further deliberations, but counsel also approved of the manner in which the court handled the problem. This court has stated on many occasions that a party "may not pursue

one course of action at trial for tactical reasons and later on appeal argue that the path he rejected should now be open to him." (Internal quotation marks omitted.) *State* v. *Barber*, 64 Conn. App. 659, 670, 781 A.2d 464, cert. denied, 258 Conn. 925, 783 A.2d 1030 (2001).[18]

That portion of the judgment that was rendered in favor of Rhoda Cohn, therefore, is affirmed.

## II

### AC 26858 and AC 27011

Stuart Cohn appeals challenging the court's setting aside the verdict as to him and ordering a new trial. See footnote 3. On appeal, he claims that the court improperly set aside the verdict because (1) it considered the handwritten language on the first set of verdict forms, and (2) the verdict was reasonable under the pleadings and evidence presented. We are not persuaded by the claims. Because they are intertwined, we will address them as one.

In part I B, we set out in detail the procedural history surrounding the two sets of verdict forms submitted by the jury. Only the verdict form concerning Stuart Cohn is at issue. The jury form accepted by the court stated: "We, the jury, find that defendant Stuart Cohn is liable to plaintiff L. Lynne Hall and award damages as follows:

"1. Economic damages $ 0.00

"2. Noneconomic damages $ 0.00

"3. Total damages (1) plus (2) $ 0.00"[19]

---

[18] We also note that the basis of the claim raised on appeal was not addressed in the plaintiff's posttrial motion to set aside the verdict, which was predicated on an insufficiency of the evidence claim. In denying that motion, the court, which was present throughout trial, found that the evidence amply supported the jury's verdict as to Rhoda Cohn.

[19] The amounts were handwritten onto the verdict form.

After noting that the verdict was inconsistent, the plaintiff suggested that an additur was appropriate, given the jury's finding that Stuart Cohn was liable to the plaintiff. The court permitted the parties to submit briefs on the issue. The plaintiff made an oral motion for a mistrial on the basis of an inconsistent verdict. The court denied the motion. Thereafter, the plaintiff filed a written motion for an additur or, in the alternative, a motion for a new trial on the basis of a verdict that was inadequate, contrary to law and against the evidence because the jury awarded her no damages. The plaintiff sought a new trial as to damages only.

In ruling on the motion for additur, the court stated its view that "the jury made a legal mistake, and, therefore, some level of additur is appropriate. The jury initially returned a plaintiff's verdict form against defendant Stuart Cohn that awarded zero damages and contained a note at the bottom that read, 'count three: negligent infliction of harm (a), (d); count four: intentional infliction of harm (a), (d).' The jury also returned a defendant's verdict form for Stuart Cohn that contained a note reading, 'count one: unjust enrichment.' The court sent the jury back with instructions to return only one verdict form—either plaintiff's or defendant's—in the case of Stuart Cohn. Shortly thereafter, the jury returned with the plaintiff's verdict form that awarded zero damages and made no additional notations," prompting the following observations from the court: "The court does not know the basis of the jury's ultimate verdict with certainty. Further, both sides agreed to submit the case to the jury with general verdict forms rather than with interrogatories that might have disclosed the count or counts upon which the jury based its verdict for the plaintiff. However, from the initial verdict forms returned by the jury, it appears most likely that the jury found in the plaintiff's favor on count three, alleging negligent infliction of emotional distress . . .

and count four, alleging intentional infliction of emotional distress . . . .

"These two torts require proof that the plaintiff suffered emotional distress—and 'severe' emotional distress in the case of the intentional tort—proximately caused by [Stuart Cohn's] conduct, and the court so instructed the jury. . . . Thus, in order for the jury to have found Stuart Cohn liable for either of these torts, the jury necessarily had to find that he caused the plaintiff some amount of emotional distress. The jury was mistaken in not attaching any monetary value to this emotional distress. . . . The plaintiff is therefore entitled to an additur. . . .

"In determining the amount of additur, the court must give considerable deference to the jury, which appears to have stated, albeit awkwardly, that the plaintiff was entitled only to, at most, the minimum amount of damages.[20] The court concurs, based on its own observation of the trial and evaluation of the witnesses. In general, the court did not find the plaintiff to be a credible witness, either on liability or damages. Although she produced medical testimony to support her claims of emotional distress, that testimony depended almost entirely on her own exaggerated and in some cases fanciful reports of the underlying facts.

"Those same medical reports, however, did make occasional references to the plaintiff's delusional thinking, her grandiosity and her perception of being persecuted. To the court, this testimony provided a better

---

[20] The court's memorandum of decision contains the following footnote: "From the note at the bottom of the first set of jury verdicts, it is arguable that the jury rested its findings of liability on specifications (a) and (d) of both the infliction of harm counts. In specification (a), the plaintiff alleged that [Stuart Cohn] made 'threats to kill and/or harm the plaintiff, including a threat in March, 1998, by Stuart Cohn to the plaintiff that '[y]ou're dead.' In specification (d), the plaintiff alleged that [Stuart Cohn] had committed a 'theft of the plaintiff's dog in October, 1998, and November, 1999.' "

explanation for the plaintiff's claims than the defendant's behavior. Further, the plaintiff herself testified about the presence of a multitude of stressful and sometimes traumatic events in her life, all of which were independent of the defendant's conduct, that could have contributed to any emotional distress that she experienced during the time period in question. For all these reasons, the plaintiff is entitled only to a modest additur. The court orders an additur of $2000."

"[T]he proper appellate standard of review when considering the action of a trial court granting or denying a motion to set aside a verdict . . . [is] the abuse of discretion standard. . . . In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done. . . . We do not . . . determine whether a conclusion different from the one reached could have been reached. . . . A verdict must stand if it is one that a jury reasonably could have returned and the trial court had accepted." (Internal quotation marks omitted.) *Bosco* v. *Regan*, 102 Conn. App. 686, 694, 927 A.2d 325, cert. denied, 284 Conn. 914, 931 A.2d 931 (2007). "Generally, we review a decision of the trial court setting aside the verdict and ordering an additur to determine whether the trial court properly exercised its discretion. . . . When, however, the trial court concludes, as a matter of law, that it is compelled to act in a particular fashion, plenary review is appropriate." (Internal quotation marks omitted.) *Right* v. *Breen*, 277 Conn. 364, 371, 890 A.2d 1287 (2006).

On appeal, Stuart Cohn argues that the parties agreed to submit the case to the jury with verdict forms that would produce a general verdict. No interrogatories were submitted to the jury pursuant to Practice Book

§ 16-18.[21] Moreover, after the jury returned the first set of jury forms, because they did not conform with the court's instructions, counsel for the parties and the court agreed that the first set of verdict forms would be marked for identification and that a fresh set of verdict forms would be given to the jury when it returned to the jury room for further deliberations as instructed by the court. The substance of Stuart Cohn's argument is that the court improperly consulted the first set of jury forms to interpret the meaning of the jury's second set of verdict forms when deciding the plaintiff's motion to set aside the verdict and, thus, denied the parties a general verdict. We agree that the court improperly consulted the first set of verdict forms when it decided the plaintiff's motion to set aside the verdict but conclude that the court properly set aside the verdict on the basis of the general verdict rule. This court may affirm the judgment of the trial court even though it may have been founded on an improper reason. See *Stapleton* v. *Lombardo*, 151 Conn. 414, 417, 198 A.2d 697 (1964).

In our jurisprudence, it has long been the rule to exclude "as immaterial, evidence as to the expressions and arguments of the jurors in their deliberations and evidence as to their own motives, beliefs, mistakes and mental operations generally, in arriving at their verdict. . . . That rule has been aptly described as applying the parol evidence rule to a jury's verdict, so that their outward verdict as finally and formally made, and not

---

[21] Practice Book § 16-18 provides: "The judicial authority may submit to the jury written interrogatories for the purpose of explaining or limiting a general verdict, which shall be answered and delivered to the clerk as a part of the verdict. The clerk will take the verdict and then the answers to the several interrogatories, and thereafter the clerk will take the judicial authority's acceptance of the verdict returned and the questions as answered, and proceed according to the usual practice. The judicial authority will not accept a verdict until the interrogatories which are essential to the verdict have been answered."

their prior and private intentions, is taken as exclusively constituting the act." (Citation omitted; internal quotation marks omitted.) *Aillon* v. *State*, 168 Conn. 541, 550, 363 A.2d 49 (1975).

In this case, the parties agreed not to submit interrogatories to the jury. They were, therefore, seeking a general verdict. The court rejected the first set of verdict forms the jury returned and sent the jury back to continue deliberations and complete a fresh set of verdict forms. When the jury completed the second set of verdict forms, it returned general verdicts, which are the verdicts the court accepted. When the court consulted the first set of verdict forms to decide the plaintiff's written motion to set aside the verdict, it in effect utilized the first set of verdict forms as if they were interrogatories to construe the meaning of the jury's having found in favor of the plaintiff as to Stuart Cohn but awarding her no damages.

If the jury initially had followed the court's instruction on completing the verdict forms, there would have been but one set of verdict forms, and nothing more, for the court to consider. The fact that the jury first returned nonconforming verdict forms that were not accepted by the court does not change the basis on which the court should have decided the plaintiff's motion for additur or to set aside the verdict. The court accepted only one set of verdict forms, and those were the only verdict forms it should have considered when ruling on the plaintiff's motions. While it is understandable that the court wanted to evaluate everything before it when deciding the motion to set aside the verdict, we conclude that in doing so it, in effect, considered an aspect of the jury's deliberations. We therefore conclude that it was improper for the court to consider the handwritten notations on the first set of verdict forms. That conclusion, however, does not complete our analysis.

"Under the general verdict rule, if a jury renders a general verdict for one party, and [the party raising a claim of error on appeal did not request] interrogatories, an appellate court will presume that the jury found *every* issue in favor of the prevailing party. . . . Thus, in a case in which the general verdict rule operates, if any ground for the verdict is proper, the verdict must stand; only if every ground is improper does the verdict fall. . . . The rule rests on the policy of the conservation of judicial resources, at both the appellate and trial levels." (Emphasis added; internal quotation marks omitted.) *Cavaliere* v. *Olmsted*, 98 Conn. App. 343, 347, 909 A.2d 52 (2006). "Where two or more counts have been alleged in a complaint . . . the defendant has the right to save himself from the implication of a general verdict by seeking from the jury answers to apt and proper interrogatories." (Internal quotation marks omitted.) *Hackling* v. *Casbro Construction of Rhode Island*, 67 Conn. App. 286, 296, 786 A.2d 1214 (2001).

As previously noted, Stuart Cohn did not request that interrogatories be submitted to the jury. As to him, the jury returned a general verdict finding in favor of the plaintiff. We must presume, therefore, that the jury found every issue for the plaintiff. See, e.g., *Cuartas* v. *Greenwich*, 14 Conn. App. 370, 372, 540 A.2d 1071, cert. denied, 209 Conn. 803, 548 A.2d 436 (1988). The question is whether the jury's verdict was inconsistent as to the plaintiff's allegations, which included two tort claims. In order to prevail on those claims, the plaintiff needed to prove duty, breach, proximate cause and damages. See, e.g., *Angiolillo* v. *Buckmiller*, 102 Conn. App. 697, 711, 927 A.2d 312, cert. denied, 284 Conn. 927, 934 A.2d 243 (2007). The court so instructed the jury. The jury, despite finding every issue for the plaintiff, awarded her neither economic nor noneconomic damages.

"[T]he decision to set aside the verdict entails the exercise of a broad legal discretion that, in the absence

of clear abuse, we shall not disturb. . . . In our review of the exercise of this discretion, we accord great weight to the trial court's decision . . . so long as the trial court's exercise of its discretion does not infringe on the constitutional rights of the litigants to have issues of fact determined by a jury. . . . This right is an obviously immovable limitation on the legal discretion of the court to set aside a verdict . . . ." (Citations omitted; internal quotation marks omitted.) *Ginsberg* v. *Fusaro*, 225 Conn. 420, 425, 623 A.2d 1014 (1993).

"[T]he role of the trial court on a motion to set aside the jury's verdict is not to sit as a seventh juror, but, rather, to decide whether, viewing the evidence in the light most favorable to the prevailing party, the jury could reasonably have reached the verdict that it did." (Internal quotation marks omitted.) *Purzycki* v. *Fairfield*, 44 Conn. App. 359, 362, 689 A.2d 504 (1997), rev'd on other grounds, 244 Conn. 101, 708 A.2d 937 (1998). "A verdict is not defective as a matter of law as long as it contains an intelligible finding so that its meaning is clear. . . . A verdict will be deemed intelligible if it clearly manifests the intent of the jury." (Citation omitted; internal quotation marks omitted.) *Tisdale* v. *Riverside Cemetery Assn.*, 78 Conn. App. 250, 257, 826 A.2d 232, cert. denied, 266 Conn. 909, 832 A.2d 74 (2003). "[A] verdict finding the issues for the party seeking to recover damages but awarding zero damages [is] inherently ambiguous." *Ginsberg* v. *Fusaro*, supra, 225 Conn. 425.

In this case, the jury found in favor of the plaintiff but awarded her zero damages. "An explicitly stated award of *zero* damages differs from an award of nominal damages. A plaintiff's verdict with a nominal damage award ordinarily suggests that the jury found that despite the defendant's liability, the plaintiff failed to prove damages. . . . The jury's intent in rendering a plaintiff's verdict with zero damages . . . is far less

clear." (Citations omitted; emphasis in original.) *Malmberg* v. *Lopez*, 208 Conn. 675, 681–82, 546 A.2d 264 (1988).

"[T]he amount of a damage award is a matter peculiarly within the province of the trier of fact . . . and [i]f, on the evidence, the jury could reasonably have decided as [it] did, [the reviewing court] will not find error in the trial court's acceptance of the verdict . . . . The trial court's decision is significant because the trial judge has had the same opportunity as the jury to view the witnesses, to assess their credibility and to determine the weight that should be given to their evidence. Moreover, the trial judge can gauge the tenor of the trial, as we, on the written record, cannot, and can detect those factors, if any, that could improperly have influenced the jury. . . . Our task is to determine whether the total damages awarded falls somewhere within the necessarily uncertain limits of fair and reasonable compensation in the particular case." (Citation omitted; internal quotation marks omitted.) *Hughes* v. *Lamay*, 89 Conn. App. 378, 384, 873 A.2d 1055, cert. denied, 275 Conn. 922, 883 A.2d 1244 (2005).

In considering the plaintiff's posttrial motion for additur, or in the alternative a motion to set aside the verdict, the court concluded that the jury had made a mistake by finding in favor of the plaintiff but awarding her zero damages. In analyzing the evidence presented at trial, the court found, as noted, that the plaintiff was not credible as to either liability or damages. See footnote 5. The court awarded the plaintiff a nominal additur, which the plaintiff rejected. We therefore conclude that the court properly set aside the verdict and ordered a new trial as to the issues of liability and damages because the verdict is inconsistent. See *Malmberg* v. *Lopez*, supra, 208 Conn. 681.

The judgment is affirmed.

In this opinion the other judges concurred.