## L. LYNNE HALL *v.* STANLEY BERGMAN ET AL.
### (SC 18155)

Rogers, C. J., and Palmer, Vertefeuille, Zarella and Rodriguez, Js.*

* This case was argued prior to the implementation of the policy of this court to hear all cases en banc.

Argued April 23, 2009—officially released May 11, 2010

*Rene Gerard Martineau*, for the appellant (defendant Stuart Cohn).

*Susan M. Phillips*, for the appellee (plaintiff).

*Opinion*

PALMER, J. The plaintiff, L. Lynne Hall, commenced this action against the defendant Stuart Cohn, among others,[1] alleging, inter alia, unjust enrichment, intentional infliction of emotional distress and negligent infliction of emotional distress. A jury returned a general verdict in favor of the plaintiff and against the defendant but awarded the plaintiff zero damages. The plaintiff subsequently filed a motion for additur or, in the alternative, to set aside the verdict and to order a new trial. The trial court ordered an additur of $2000, which the plaintiff rejected. The court then set aside the verdict and ordered a new trial. On appeal to the Appellate Court, the defendant claimed the trial court improperly had set aside the verdict. The Appellate

---

[1] Stanley Bergman, Rhoda Cohn and Joel Cohn Revocable Trust also were named as defendants in the plaintiff's original complaint. None of these parties participated in this appeal. In the interest of simplicity, we refer to Stuart Cohn as the defendant throughout this opinion.

Court rejected the defendant's claim and affirmed the judgment of the trial court. *Hall* v. *Bergman*, 106 Conn. App. 660, 681, 943 A.2d 515 (2008). We granted the defendant's petition for certification to appeal limited to the following issue: "Did the Appellate Court properly affirm the trial court's order setting aside the jury verdict?" *Hall* v. *Bergman*, 287 Conn. 911, 950 A.2d 1287 (2008). We answer the question in the affirmative and, accordingly, affirm the judgment of the Appellate Court.

The following facts and procedural history, which are not in dispute, are set forth in the opinion of the Appellate Court. "The plaintiff commenced this action on December 6, 2000, against . . . [the defendant, who] is the beneficiary of [the Joel Cohn Revocable Trust (trust)]. . . . [T]he trust was the owner of a condominium known as 16-18-20 Temple Court in New Haven (condominium), which is handicapped accessible and equipped. The [plaintiff's] second amended complaint, which is the operative complaint [sought damages against the defendant for unjust enrichment, intentional infliction of emotional distress and negligent infliction of emotional distress].[2] . . . The plaintiff sought damages of at least $3,708,000.

"The factual allegations of the plaintiff's complaint follow. In May, 1995, Rhoda Cohn approached the plaintiff and informed her that [the defendant], her son, and his wife were divorcing and vacating the condominium. Because the condominium had been constructed to accommodate a person with physical impairments . . . Rhoda Cohn thought that the condominium would be suitable for the plaintiff, who suffered from a physical disability. . . . [I]n August, 1995, [the plaintiff] entered into a long-term lease agreement for the condominium

---

[2] The plaintiff also alleged a violation of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq., but the plaintiff withdrew that claim at trial. *Hall* v. *Bergman*, supra, 106 Conn. App. 663–64.

with [the defendant], who was acting as agent for the trust. Approximately two years later, Rhoda Cohn, acting as trustee, decided to sell the condominium and engaged [the defendant] to approach the plaintiff with an offer to purchase the condominium. . . . [W]hen [the plaintiff] refused to purchase the condominium, Rhoda Cohn instituted a summary process action against her, which was dismissed. Thereafter, [the defendant] commenced a second summary process action to evict the plaintiff from the condominium. [According to the plaintiff, the defendant] threatened her, violated court orders with respect to her, sexually assaulted her, sabotaged assistive technology devices, misappropriated her personal and professional identity, and in the summer of 1999 permitted a family of a different race to live in the condominium to compel the plaintiff to purchase the premises. The plaintiff also [claimed] that the [defendant] had been unjustly enriched because [the plaintiff] had made certain improvements to the condominium. . . .

"The jury . . . initially returned two verdict forms concerning [the defendant]. One of the forms contained the following typewritten statement: 'We, the jury, find in favor of [the] defendant . . . in the above captioned case,' but it also contained the handwritten words, 'Count One: Unjust Enrichment.' The second verdict form contained typewritten language with handwritten figures: 'We, the jury, find that [the] defendant . . . is liable to [the] plaintiff . . . and award damages as follows: 1. Economic damages $ 0.00 2. Noneconomic damages $ 0.00 3. Total damages (1) plus (2) [$] 0.00.' The verdict form also contained the following handwritten language:

" 'Count Three: Negligent Infliction of harm. (a), (d)

" 'Count Four: Intentional Infliction of harm (a), (d).' " *Hall* v. *Bergman*, supra, 106 Conn. App. 663–66.

"After the jury returned [the verdict forms], the court addressed the jury: 'Ladies and gentlemen, I've examined your verdict forms. They are not in compliance with the court's instructions, which require that . . . you are to return one verdict. . . . It's not clear as to what exactly your verdict is, so I'm going to send you back and give you [a clean set of verdict forms]. Mister foreman, do you think—do you understand what the court is asking?' The foreman responded in the affirmative. The court reminded the jury that its instructions were in the copy of the court's charge, which the jury had in the jury room. The court then stated: 'So, I'll ask the jury to retire again to deliberation, and we will provide you a clean set of . . . verdict forms, and you are to return only [one in the case against the defendant].' . . .

"Counsel then approached the bench for a sidebar conference. Once again, the court instructed the jury. 'Thank you for your patience, ladies and gentlemen. Let me just add . . . [that] if you have any specific question about how to fill out the verdict form, given the conclusions you've reached, you should put those in writing, and I'll try to address them as specifically as possible. I'm not saying that you have to do that, but I'm just reminding you that you may do that if you wish. So, I'll ask the jury to retire, and we'll stay in session for just a minute.' . . .

"The court then addressed counsel, stating, 'I've discussed the procedure with counsel at the sidebar, and I think we're in agreement that what I asked the jury to do is appropriate.' Both counsel agreed with the court's statement. Shortly thereafter, the jury returned . . . a verdict in favor of the plaintiff . . . but awarding the plaintiff no economic or noneconomic damages. The court accepted the [verdict] on the basis of the jury poll and excused the jury.

"Immediately after the jury was dismissed, counsel for the plaintiff stated that the [verdict was] inconsistent and that the plaintiff was entitled to nominal damages. The court agreed to permit the plaintiff to file a written motion for nominal damages. Thereafter, counsel for the plaintiff made an oral motion for a mistrial. Counsel for the [defendant] stated that there was no basis for a mistrial. The court ruled [in relevant part] as follows: 'The request for a mistrial is denied. . . .

" '[With respect] to the fact that the jury had apparently found liability against [the defendant] but no damages, or did so in [its] ultimate verdict, that is consistent with [the] first verdict forms, which seem to suggest that that's what [the jury] wanted to do. It's also in accordance with the instructions of the court, that the parties agreed [on], that it is the plaintiff's burden to prove damages, and that means two things. One, that [the plaintiff] was in fact damaged, she suffered damages, and, two, that the damages were the proximate cause of any wrongdoing by [the defendant]. We don't know which of the two the jury concluded, but either conclusion would be a permissible basis for a finding that [the defendant] might have been liable but [that] no damages should be awarded. So, at this point, at least, I see no basis for a mistrial, and the motion is denied.' " Id., 670–72.

"Thereafter, the plaintiff filed a written motion for an additur or, in the alternative . . . [to set aside the verdict and to order] a new trial on the basis [that the] verdict [against the defendant] . . . was inadequate, contrary to law and against the evidence because the jury awarded [the plaintiff] no damages. The plaintiff sought a new trial as to damages only.

"In ruling on the motion for additur, the court stated . . . that 'the jury made a legal mistake, and, therefore, some level of additur is appropriate. The jury initially

returned a plaintiff's verdict form against [the defendant] that awarded zero damages and contained a note at the bottom that read, "count three: negligent infliction of harm (a), (d); count four: intentional infliction of harm (a), (d)." The jury also returned a defendant's verdict form for [the defendant] that contained a note reading, "count one: unjust enrichment." The court sent the jury back with instructions to return only one verdict form—either plaintiff's or defendant's . . . . Shortly thereafter, the jury returned with the plaintiff's verdict form that awarded zero damages and made no additional notations,' prompting the following observations from the court: 'The court does not know the basis of the jury's ultimate verdict with certainty. Further, both sides agreed to submit the case to the jury with general verdict forms rather than with interrogatories that might have disclosed the count or counts [on] which the jury based its verdict for the plaintiff. However, from the initial verdict forms returned by the jury, it appears most likely that the jury found in the plaintiff's favor on [the] count[s] . . . alleging negligent infliction of emotional distress . . . and . . . intentional infliction of emotional distress . . . .

" 'These two torts require proof that the plaintiff suffered emotional distress—and "severe" emotional distress in the case of the intentional tort—proximately caused by [the defendant's] conduct, and the court so instructed the jury. . . . Thus, in order for the jury to have found [the defendant] liable for either of these torts, the jury necessarily had to find that [the defendant] caused the plaintiff some amount of emotional distress. The jury was mistaken in not attaching any monetary value to this emotional distress. . . . The plaintiff is therefore entitled to an additur. . . .

" 'In determining the amount of additur, the court must give considerable deference to the jury, which appears to have stated, albeit awkwardly, that the plain-

tiff was entitled only to, at most, the minimum amount of damages. The court concurs, based on its own observation of the trial and evaluation of the witnesses. In general, the court did not find the plaintiff to be a credible witness, either on liability or damages. Although she produced medical testimony to support her claims of emotional distress, that testimony depended almost entirely on her own exaggerated and in some cases fanciful reports of the underlying facts.

" 'Those same medical reports, however, did make occasional references to the plaintiff's delusional thinking, her grandiosity and her perception of being persecuted. To the court, this testimony provided a better explanation for the plaintiff's claims than the defendant's behavior. Further, the plaintiff herself testified about the presence of a multitude of stressful and sometimes traumatic events in her life, all of which were independent of the defendant's conduct, that could have contributed to any emotional distress that she experienced during the time period in question. For all these reasons, the plaintiff is entitled only to a modest additur. The court orders an additur of $2000.' " Id., 674–76. The plaintiff, however, rejected the additur,[3] and "the court [subsequently] set aside the jury's verdict . . . and ordered a new trial as to both liability and damages." Id., 667.

The defendant appealed to the Appellate Court, claiming that the trial court improperly had set aside the verdict. Specifically, the defendant maintained that the trial court should not have considered the jurors' handwritten notes on the verdict forms that the jury initially had returned and, further, that the verdict was reasonable under the circumstances. See id., 673. The Appellate Court agreed with the defendant's claim of

[3] The defendant did not object to the additur. *Hall* v. *Bergman,* supra, 106 Conn. App. 667 n.9.

impropriety with respect to the trial court's consideration of the jurors' notes but rejected the defendant's contention that the trial court had abused its discretion in setting aside the verdict. Id., 677. In support of its latter conclusion, the Appellate Court explained that, under the general verdict rule, it must be presumed that the jury resolved every issue in favor of the plaintiff. Id., 679. The Appellate Court then framed the relevant inquiry as one involving a determination of whether the verdict was inconsistent with the plaintiff's allegations, which required proof of duty, breach, causation and damages. Id. The court concluded that the verdict was inconsistent, stating that "[a] verdict finding the issues for the party seeking to recover damages but awarding zero damages [is] inherently ambiguous." (Internal quotation marks omitted.) Id., 680. The court then distinguished an award of zero damages and an award of nominal damages: "An explicitly stated award of *zero* damages differs from an award of nominal damages. A plaintiff's verdict with a nominal damage award ordinarily suggests that the jury found that despite the defendant's liability, the plaintiff failed to prove damages. . . . The jury's intent in rendering a plaintiff's verdict with zero damages . . . is far less clear." (Emphasis in original; internal quotation marks omitted.) Id., 680–81. The Appellate Court further observed that the trial court reasonably "concluded that the jury had made a mistake by finding in favor of the plaintiff but awarding her zero damages." Id., 681. Accordingly, the Appellate Court upheld the trial court's decision to set aside the verdict and to order a new trial.

On appeal to this court, following our granting of certification, the defendant renews the claims that he raised in the Appellate Court. We reject those claims for the same reasons that the Appellate Court rejected them.

The applicable standard of review is well settled. "The proper appellate standard of review when considering the action of a trial court in granting or denying a motion to set aside a verdict is the abuse of discretion standard. . . . In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only [when] an abuse of discretion is manifest or [when] injustice appears to have been done." (Citations omitted; internal quotation marks omitted.) *Label Systems Corp.* v. *Aghamohammadi*, 270 Conn. 291, 303, 852 A.2d 703 (2004). "[T]he role of the trial court on a motion to set aside the jury's verdict is not to sit as [an added] juror . . . but, rather, to decide whether, viewing the evidence in the light most favorable to the prevailing party, the jury could reasonably have reached the verdict that it did." (Internal quotation marks omitted.) *Hunt* v. *Prior*, 236 Conn. 421, 429 n.21, 673 A.2d 514 (1996). "In reviewing the action of the trial court in denying [or granting a motion] . . . to set aside the verdict, our primary concern is to determine whether the court abused its discretion . . . . The trial court's decision is significant because the trial judge has had the same opportunity as the jury to view the witnesses, to assess their credibility and to determine the weight that should be given to [the] evidence. Moreover, the trial judge can gauge the tenor of the trial, as [this court], on the written record, cannot, and can detect those factors, if any, that could improperly have influenced the jury." (Internal quotation marks omitted.) *Childs* v. *Bainer*, 235 Conn. 107, 113, 663 A.2d 398 (1995).

We first note our agreement with the conclusion of the Appellate Court that the trial court improperly considered the verdict forms that the jury originally had returned when the court ruled on the plaintiff's motion to set aside the verdict. "It is well established that evi-

dence as to the expressions and arguments of the jurors in their deliberations and evidence as to their own motives, beliefs, mistakes and mental operations generally, in arriving at their verdict is excludable in postverdict proceedings as immaterial. . . . That rule has been aptly described as applying the parol evidence rule to a jury's verdict, so that [the jurors'] outward verdict as finally and formally made, and not their prior and private intentions, is taken as exclusively constituting the act." (Citations omitted; internal quotation marks omitted.) *State* v. *Gary*, 273 Conn. 393, 415, 869 A.2d 1236 (2005). In reviewing the first set of verdict forms for the purpose of deciding the plaintiff's motion to set aside the verdict, the trial court effectively used them as "interrogatories to construe the meaning of the jury's having found in favor of the plaintiff as to [the defendant] but awarding [the plaintiff] no damages." *Hall* v. *Bergman*, supra, 106 Conn. App. 678. As the Appellate Court also explained, although "it is understandable that the [trial] court wanted to evaluate everything before it [in] deciding the motion to set aside the verdict," the court, in so doing, effectively "considered an aspect of the jury's deliberations." Id. Consequently, the trial court was not free to consult the original verdict forms in determining whether to grant the plaintiff's motion.

The impropriety was harmless, however, because, as the Appellate Court explained, the general verdict rule provides an independent, alternative basis for upholding the trial court's decision to set aside the verdict and to order a new trial. See, e.g., *Morris* v. *Costa*, 174 Conn. 592, 597–98, 392 A.2d 468 (1978) (when "the trial court reaches a correct decision but on mistaken grounds, this court has repeatedly sustained the trial court's action if proper grounds exist to support it"). "Under the general verdict rule, if a jury renders a general verdict for one party, and [the party raising a claim

of error on appeal did not request] interrogatories, an appellate court will presume that the jury found every issue in favor of the prevailing party. . . . Thus, in a case in which the general verdict rule operates, if any ground for the verdict is proper, the verdict must stand; only if every ground is improper does the verdict fall. . . . The rule rests on the policy of the conservation of judicial resources, at both the appellate and trial levels."[4] (Internal quotation marks omitted.) *Tetreault* v. *Eslick*, 271 Conn. 466, 471, 857 A.2d 888 (2004). "The rule applies whenever a verdict for one party could reasonably be rendered on one or more distinct causes of action . . . or distinct defenses. . . . A party desiring to avoid the effects of the general verdict rule may elicit the specific grounds for the verdict by submitting interrogatories to the jury. Alternatively, if the action is in separate counts, a party may seek separate verdicts on each of the counts." (Citations omitted; internal quotation marks omitted.) *Curry* v. *Burns*, 225 Conn. 782, 786, 626 A.2d 719 (1993). In light of these principles, we agree with the Appellate Court that, because multiple causes of action were submitted to the jury without

[4] As this court previously has explained, "[o]n the appellate level, the [general verdict] rule relieves an appellate court from the necessity of adjudicating claims of error that may not arise from the actual source of the jury verdict that is under appellate review. In a typical general verdict rule case, the record is silent regarding whether the jury verdict resulted from the issue that the appellant seeks to have adjudicated. Declining in such a case to afford appellate scrutiny of the appellant's claims is consistent with the general principle of appellate jurisprudence that it is the appellant's responsibility to provide a record [on] which reversible error may be predicated. . . .

"In the trial court, the [general verdict] rule relieves the judicial system from the necessity of affording a second trial if the result of the first trial potentially did not depend [on] the trial errors claimed by the appellant. Thus, unless an appellant can provide a record to indicate that the result the appellant wishes to reverse derives from the trial errors claimed, rather than from the other, independent issues at trial, there is no reason to spend the judicial resources to provide a second trial." (Citation omitted; internal quotation marks omitted.) *Dowling* v. *Finley Associates, Inc.*, 248 Conn. 364, 371–72, 727 A.2d 1245 (1999).

interrogatories and the jury returned a general verdict for the plaintiff, the general verdict rule applies. As we have explained, under that rule, we presume that the jury resolved every issue in the plaintiff's favor. Thus, we presume that the plaintiff proved every element of each of her claims.[5]

The plaintiff's three claims against the defendant were submitted to the jury, and the jury was informed, as part of the trial court's instructions,[6] that the plaintiff must prove injury in fact in order to prevail on her claims. In the first of these claims, the plaintiff alleged unjust enrichment, which required the jury to find that the plaintiff had suffered financial detriment.[7] The plaintiff also raised two tort claims, namely, "negligent infliction of emotional distress and physical harm,"[8] and "intentional infliction of emotional distress and physical harm,"[9] both of which require proof of actual injury.

[5] The defendant contends that a review of this court's cases involving the general verdict rule reveals that we have applied the rule only when the trial court has denied a motion to set aside the verdict. Although that typically may be the case, there is no reason why the rule should not be applicable when, as in the present case, the court has granted a motion to set aside the verdict and the party seeking to have the reviewing court uphold the decision to grant that motion can establish that the requirements of the rule have been satisfied.

[6] No objections were raised with respect to the trial court's instructions.

[7] To prevail on a claim of unjust enrichment, the plaintiff "must prove (1) that the [defendant was] benefited, (2) that the [defendant] unjustly did not pay the [plaintiff] for the benefits, and (3) that the failure of payment was to the [plaintiff's] detriment." (Internal quotation marks omitted.) *Vertex, Inc.* v. *Waterbury*, 278 Conn. 557, 573, 898 A.2d 178 (2006).

[8] To prevail on a claim of negligent infliction of distress, the plaintiff is required to prove that "(1) the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress; (2) the plaintiff's distress was foreseeable; (3) the emotional distress was severe enough that it might result in illness or bodily harm; and (4) the defendant's conduct was the cause of the plaintiff's distress." *Carrol* v. *Allstate Ins. Co.*, 262 Conn. 433, 444, 815 A.2d 119 (2003).

[9] To prove intentional infliction of distress, the plaintiff must demonstrate "(1) that the [defendant] intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result [from] his conduct; (2) that the conduct was extreme and outrageous; (3)

Because we must presume that the plaintiff established actual injury under all three of her claims, we also must presume that the plaintiff established damages stemming from that injury. As the Appellate Court observed, however, this presumption is inconsistent with the jury's award of zero damages. Consequently, the jury verdict in favor of the plaintiff is insolubly ambiguous. In other words, in such circumstances, "it cannot be stated with certainty either that the jury found that the plaintiff had failed to prove any damages or that the jury was confused as to the correct interplay between damages and liability. . . . The appropriate course of action when such an ambiguous verdict is [returned] is to order a new trial on all issues." (Citations omitted.) *Fox* v. *Colony T.V. & Appliance, Inc.*, 37 Conn. App. 453, 455–56, 656 A.2d 705, cert. denied, 233 Conn. 915, 659 A.2d 185 (1995), citing *Malmberg* v. *Lopez*, 208 Conn. 675, 682, 546 A.2d 264 (1988).

We also agree with the Appellate Court that this case is controlled by our decision in *Malmberg*. The plaintiff in *Malmberg*, Margaret Malmberg, brought an action as administratrix of the victim's estate, seeking damages for the wrongful death of the victim. *Malmberg* v. *Lopez*, supra, 208 Conn. 676. The jury returned a verdict for Malmberg but awarded zero damages. Id. Malmberg filed a motion to set aside the verdict on the ground that the award was contrary to the law and evidence, and sought a new trial on damages only. Id. The trial court denied the motion, concluding that "[i]t was quite evident that the jury concluded [that Malmberg] failed to sustain her burden of proof with respect to the injury mechanism and causal relationship between the . . . negligence [of the defendant, Ann Marie Lopez] and the

that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." (Internal quotation marks omitted.) *Appleton* v. *Board of Education*, 254 Conn. 205, 210, 757 A.2d 1059 (2000).

[victim's] death." (Internal quotation marks omitted.) Id., 680. Malmberg appealed to the Appellate Court, which reversed the judgment of the trial court and remanded the case for a hearing on damages only; see id., 676; concluding, contrary to the determination of the trial court, that the evidence supported the jury's finding as to liability. Id., 679. Upon our granting of certification, we reversed the judgment of the Appellate Court and remanded the case for a new trial on both liability and damages. Id., 683. In so doing, we recognized that "neither the Appellate Court nor this court [was] in a position . . . to ascertain from the conflicting jury verdict how the members of the jury found on the underlying issue of liability." Id., 680. After noting "that the Appellate Court should have recognized the inherent ambiguity in the jury's verdict"; id., 681; we concluded that, when "liability is strongly contested and the award of damages is clearly inadequate if liability were proven . . . an appellate court cannot infer from the jury verdict alone whether the jury [was] confused about the proper measure of damages or whether [the jury was] confused about the proper rules for determining liability, or both. . . . [When] . . . liability is contested and an appellate court is unable to infer whether upon a new trial a jury would find in favor of the defendant or in favor of the plaintiff an appellate court must remand the case for a trial on all issues." (Citation omitted; internal quotation marks omitted.) Id., 682.

In the present case, as in *Malmberg*, the jury returned a general verdict in the plaintiff's favor but awarded zero damages even though (1) the plaintiff's claims required proof of actual injury, and (2) it must be presumed, in light of the general verdict rule, that the plaintiff proved such injury. As in *Malmberg*, therefore, we cannot conclude in the present case with any degree of certainty

whether the jury was confused about the proper measure of damages or about the proper rules for determining liability or both. See id. As we explained in *Malmberg*, "the jury's intent in finding the issues for the plaintiff, but awarding zero damages, is known only to the jurors, and this court's endorsement of one plausible explanation of the verdict over another would amount merely to speculation. Such ambiguity requires a rehearing in full, on both liability and damages."[10] Id., 683.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

---

[10] Our decision in *Right* v. *Breen*, 277 Conn. 364, 890 A.2d 1287 (2006), is not to the contrary. In *Right*, we concluded only that, in a negligence action, proof of liability without proof of damages does not require an award of nominal damages. Id., 366. The defendant in *Right*, Kimberly Breen, admitted liability but claimed that her negligence had not caused the plaintiff, Robert Right, any injury. Id., 367. Using a verdict form provided by Right, the jury returned a verdict of zero economic damages and zero noneconomic damages. Id. The trial court thereafter granted Breen's motion to set aside the verdict and awarded Right $1 in nominal damages "premised [on Breen's] admission of negligence." Id., 368. The Appellate Court affirmed the judgment of the trial court. Id., 369. Breen then appealed to this court, and we concluded that Right was not entitled to nominal damages merely because Breen had admitted liability. See id., 376–77. In essence, we concluded that there was no reason why Right was entitled to nominal damages in view of the fact that he had failed to prove that Breen's negligence had caused him any injury. See id. *Right*, therefore, is inapposite because, in *Right*, in contrast to the present case, the verdict that the jury returned was neither ambiguous nor inconsistent. Other cases on which the defendant in the present case relies do not support his claim because those cases, like *Right*, also involve unambiguous verdicts. See, e.g., *Skrzypiec* v. *Noonan*, 228 Conn. 1, 10–12, 633 A.2d 716 (1993); *Hughes* v. *Lamay*, 89 Conn. App. 378, 386, 873 A.2d 1055, cert. denied, 275 Conn. 922, 883 A.2d 1244 (2005).