## NATALIE SIGULAR *v.* WILLIAM E. GILSON
### (AC 33703)

Beach, Espinosa and Schaller, Js.*

---

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

Argued September 25, 2012—officially released April 2, 2013

*John F. Buckley, Jr.*, with whom was *John M. Parese*, for the appellant (plaintiff).

*Julie Harris*, with whom was *Yelena Akim*, for the appellee (defendant).

*Opinion*

SCHALLER, J. In this negligence action, the plaintiff, Natalie Sigular, appeals from the judgment rendered in accordance with the jury's verdict. On appeal, she claims that the trial court abused its discretion in denying her motion to set aside the verdict and order a new trial because the verdict was (1) inherently ambiguous and contrary to the law and evidence and (2) wholly inadequate, shocked the conscience and was governed

by mistake, prejudice or corruption. We affirm the judgment of the trial court.

The following procedural history and facts, which the jury could have reasonably found, are relevant to the plaintiff's claims. On or about April 19, 2008, the decedent, William Gilson, entered an intersection in violation of a stop sign and struck the front end of the plaintiff's vehicle.[1] The plaintiff initiated this action seeking damages from the defendant and alleging that, as a result of the decedent's negligence and violation of motor vehicle laws, she suffered abrasions, a head injury, cervical and lumbar spine sprains and injuries to the tissues surrounding the aforementioned areas, as well as pain and anguish. The plaintiff alleges that, as a result of the automobile accident, she sustained physical injuries and incurred financial obligations due to medical care. The plaintiff did not allege any damage to property, and, although alleged in the operative complaint, the plaintiff made no claim at trial for lost wages or earning capacity.

After the accident, plaintiff sought treatment at the emergency room for head pain, burns and abrasions. The next day, the plaintiff began experiencing lower back pain and stiffness, and sought treatment from Phillip Luchini, an orthopedic surgeon, shortly thereafter. Luchini initially examined the plaintiff in April, 2008. The plaintiff's exam revealed stiffness and muscle spasm in her lower back,[2] but there was no evidence of nerve damage or pain radiating to the her legs and her X ray was normal. Luchini diagnosed the plaintiff with a soft tissue lumbar sprain and prescribed physical

---

[1] Lorraine Gilson, administratrix of the estate of William Gilson, was substituted for the named defendant on June 7, 2011. Thus, William Gilson will be referred to as the decedent and Lorraine Gilson will be referred to as the defendant.

[2] A muscle spasm is an involuntary contraction of the muscle, which can restrict the range of motion.

therapy as well as an anti-inflammatory medication. The plaintiff underwent physical therapy, which improved the pain and stiffness. After completing physical therapy, the plaintiff was able to engage in all desired activities, but, at times, she remained hesitant to do so. The plaintiff had occasional spasms, which would subside when taking her prescribed anti-inflammatory medication and engaging in the exercises prescribed by her physician.

The plaintiff returned to Luchini for another exam in May, 2008, during which she indicated that stiffness and pain in her lower back were less severe. The plaintiff saw Luchini again in June, 2008, at which time her symptoms had resolved and she reported no discomfort in her lower back area. Luchini told the plaintiff that she could resume her regular activities and to return if she had any recurring problems. The plaintiff returned to Luchini for another follow up examination in February, 2009. Upon finding that the plaintiff's lower back symptoms had resolved, and that she had no spasms and excellent range of motion, Luchini discharged the plaintiff.

The plaintiff returned to see Luchini in October, 2009, with recurring spasm and stiffness in her lower back; Luchini suggested that the plaintiff take anti-inflammatory medication and indicated that she might require additional physical therapy should her symptoms become more severe, but did not prescribe physical therapy during her visit. At this time, Luchini diagnosed the plaintiff with a 5 percent impairment of her lumbar sacral spine.[3] About one year later, in November, 2010,

[3] Specifically, Luchini testified that in his opinion the plaintiff has a "permanent or chronic muscular ligament sprain of the lumbar sacral spine." Such a condition may result in limiting activities that put stress on the lower back such as sports, lifting and bending. "[T]he patient is not necessarily symptomatic every day in day out. They have periods where they feel better or periods when they feel worse."

the plaintiff again presented to Luchini with complaints of back stiffness. Luchini ordered new X rays, which he testified were normal, and he again prescribed anti-inflammatory medication and another course of physical therapy. The plaintiff made her final visit to Luchini in February, 2011, indicating that she still experienced lower back pain, that the pain was less severe and that it tended to recur with strenuous activity.

The jury heard conflicting testimony regarding the nature and extent of the plaintiff's claimed injuries. During cross-examination the plaintiff admitted that in previous depositions she reported pain radiating from her back to her legs. These symptoms, however, were not reported to Luchini during any of the plaintiff's visits. The defendant also asked the plaintiff, on cross-examination, about her responses to interrogatories in which she stated that she suffered a neck injury. The plaintiff had previously testified during trial to the contrary that she did not experience any pain or injury to her neck. The plaintiff was also questioned regarding the extent to which her injury limited her ability to participate in various activities. The plaintiff had testified that she was not incapable of performing any activities, but performed some with caution.[4]

The court instructed the jury regarding the plaintiff's claims of negligence and negligence per se. The jury was provided with a defendant's general verdict form and a plaintiff's verdict interrogatory form. The plaintiff's form posed three questions. The first question asked whether the negligence of the decedent proximately caused the plaintiff's injuries and directed that, if answered affirmatively, the jury proceed with question two. Question two then asked whether the plaintiff suffered damages as a result of the decedent's negligence,

[4] Specifically, the plaintiff testified that as a result of her back injury, housework and recreational activities, such as bowling or tennis, were more difficult.

and instructed that, if answered affirmatively, the jury should continue on to question three, but if answered negatively, the jury should report that it had reached a defendant's verdict. Question three asked the jury to determine the amount of damages suffered by the plaintiff, by specifically listing the relevant economic and noneconomic damages.

The jury first returned a verdict for the plaintiff and awarded zero economic damages and $5000 noneconomic damages to the plaintiff. The court accepted the verdict, and the plaintiff objected on the ground that the verdict was inconsistent as a matter of law. The court vacated its order accepting and recording the verdict and instructed the jury that the jury must review its verdict, but need not change it, and repeated its instructions pertaining to economic damages. The jury again returned a verdict for the plaintiff, answering yes to interrogatories one and two on the plaintiff's verdict form, but awarding zero economic and zero noneconomic damages.[5]

The plaintiff filed a motion to set aside the verdict and order a new trial. The trial court denied the plaintiff's motion, concluding that the jury's failure to award damages was not inherently ambiguous. Specifically, the court stated that the evidence was such that "the jury could [have drawn] a reasonable conclusion that the plaintiff did not sufficiently establish the amount of injuries and damages she received as a result of the

[5] We note that like the trial court, we may not consult the jury's original verdict form in conducting our analysis. "It is well established that evidence as to the expressions and arguments of the jurors in their deliberations and evidence as to their own motives, beliefs, mistakes and mental operations generally, in arriving at their verdict is excludable in postverdict proceedings as immaterial." (Internal quotation marks omitted.) *Hall* v. *Bergman*, 296 Conn. 169, 179–80, 994 A.2d 666 (2010). Considering the original verdict forms is effectively considering an aspect of jury deliberations. Id. Accordingly, we address the plaintiff's claims only as they pertain to the jury's second verdict form.

accident . . . ." The trial court further held that "[t]he plaintiff did not present, nor did the court see, any factors that could have improperly influenced the jury such that the verdict would shock the conscience." This appeal followed.

## I

The plaintiff first claims that the court should have set aside the verdict on the grounds that it was (1) inherently ambiguous for the jury to return a verdict in favor of the plaintiff but to award zero damages and (2) contrary to the evidence and the law. We are not persuaded.

As a preliminary matter, we set forth the standard of review that will guide our analysis. "[T]he role of the trial court on a motion to set aside the jury's verdict is not to sit as a seventh juror, but, rather, to decide whether, viewing the evidence in the light most favorable to the prevailing party, the jury could reasonably have reached the verdict that it did. . . . A verdict is not defective as a matter of law as long as it contains an intelligible finding so that its meaning is clear. . . . A verdict will be deemed intelligible if it clearly manifests the intent of the jury. . . . [T]he amount of a damage award is a matter peculiarly within the province of the trier of fact . . . and [i]f, on the evidence, the jury could reasonably have decided as [it] did, [the reviewing court] will not find error in the trial court's acceptance of the verdict . . . . In reviewing the action of the trial court in denying the motions . . . to set aside the verdict, our primary concern is to determine whether the court abused its discretion and we decide only whether, on the evidence presented, the jury could fairly reach the verdict [it] did. The trial court's decision is significant because the trial judge has had the same opportunity as the jury to view the witnesses, to assess their credibility and to determine

the weight that should be given to their evidence. More-over, the trial judge can gauge the tenor of the trial, as we, on the written record, cannot, and can detect those factors, if any, that could improperly have influenced the jury. . . . Our task is to determine whether the total damages awarded falls somewhere within the nec-essarily uncertain limits of fair and reasonable compen-sation in the particular case . . . ." (Citations omitted; internal quotation marks omitted.) *Froom Development Corp.* v. *Developers Realty, Inc.*, 114 Conn. App. 618, 632, 972 A.2d 239, cert. denied, 293 Conn. 922, 980 A.2d 909 (2009).

The plaintiff first asserts that the jury's verdict was inherently ambiguous. We disagree. In support of her argument, the plaintiff cites *Hall* v. *Bergman*, 296 Conn. 169, 994 A.2d 666 (2010), *Ginsberg* v. *Fusaro*, 225 Conn. 420, 623 A.2d 1014 (1993), and *Malmberg* v. *Lopez*, 208 Conn. 675, 546 A.2d 264 (1988). In each of these cases, our Supreme Court held that a verdict in favor of the party seeking damages, but failing to award damages, was inherently ambiguous. The present case, however, is easily distinguishable from the aforementioned cases in that here, the nature and extent of the plaintiff's injuries were contested and the plaintiff raised claims of negligence as well as negligence per se.[6] Accordingly,

[6] In so concluding, we note the following distinctions. In *Hall*, as in *Malmberg*, our Supreme Court, applying the general verdict rule, presumed that the plaintiff established actual injury, and thus established damages stem-ming from that injury. *Hall* v. *Bergman*, supra, 296 Conn. 182–83, 185; *Malmberg* v. *Lopez*, supra, 208 Conn. 681–83. "Under the general verdict rule, if a jury renders a general verdict for one party, and [the party raising a claim of error on appeal did not request] interrogatories, an appellate court will presume that the jury found every issue in favor of the prevailing party. . . . A party desiring to avoid the effects of the general verdict rule may elicit the specific grounds for the verdict by submitting interrogatories to the jury . . . [or] may seek separate verdicts on each of the [separate] counts." (Citation omitted; internal quotation marks omitted.) *Hall* v. *Berg-man*, supra, 180–81. In the present case, however, the jury returned a verdict for the plaintiff by way of the plaintiff's interrogatory form.

We further observe that, unlike the wrongful death action in *Malmberg*, the injuries in this case were highly contested. *Malmberg* v. *Lopez*, supra,

we conclude that this case more closely resembles *Froom Development Corp.* v. *Developers Realty, Inc.*, supra, 114 Conn. App. 618, and *Hughes* v. *Lamay*, 89 Conn. App. 378, 873 A.2d 1055, cert. denied, 275 Conn. 922, 883 A.2d 1244 (2005).

In *Hughes*, the plaintiff's alleged injuries were speculative in nature, and in that context, this court held that "the award of zero damages fell within the necessarily uncertain limits of fair and reasonable compensation." (Internal quotation marks omitted.) *Hughes* v. *Lamay*, supra, 89 Conn. App. 386. Likewise, in *Froom Development Corp.*, the jury was presented with conflicting evidence regarding the amount of damages the plaintiff suffered as a result of a lost business opportunity. *Froom Development Corp.* v. *Developers Realty, Inc.*, supra, 114 Conn. App. 635. In fact, the defendants' expert testified that the value of the lost opportunity was zero. Id.

In the present case, the damages were similarly contested. Although the plaintiff's physician opined that

208 Conn. 682 ("[t]he jury's intent in rendering a plaintiff's verdict with zero damages in a *wrongful death action* is . . . less clear" [emphasis added]). A general verdict, while *presumed* by an appellate court to reflect a jury's intent to find all issues in favor of the prevailing party, does not as clearly indicate a jury's intent as when it has been explained, as in the present case, by its responses to specific interrogatories. The sine qua non for reversal of an award of zero damages is ambiguity in the jury's verdict. The jury's responses to the interrogatories in the present case belie any such ambiguity and instead evince the jury's conclusion that the plaintiff did not sufficiently establish the amount of damages she incurred. Accordingly, by virtue of the jury's responses to these interrogatories, the verdict in this case was less ambiguous than the general verdicts rendered in both *Hall* and *Malmberg*.

Finally, in *Ginsberg*, the jury was specifically instructed that a finding on the issue of liability included the issues of negligence, causation and damages. *Ginsberg* v. *Fusaro*, supra, 225 Conn. 425. Conversely, the jury in the present case was charged as to the doctrine of negligence per se, and thus could have properly found liability on the basis of the decedent's violation of one or more statutes regardless of its determinations pertaining to causation and damages. For these reasons, we find the aforementioned cases inapposite to the case at bar.

the plaintiff suffered from a 5 percent impairment, the plaintiff's own testimony served as the primary source of evidence regarding the chronic pain and limitations she suffered. During cross-examination the defendant pointed to various inconsistencies within the plaintiff's testimony regarding the nature of her symptoms and her limitations, such as (1) the plaintiff's deposition testimony stating complaints of pain radiating to her legs when no such complaint was made to her physician or appeared in his reports, (2) Luchini's reports indicating that the plaintiff's symptoms had completely resolved on two separate occasions, July, 2008, and February, 2009, respectively, and (3) the plaintiff's interrogatory responses stating that she suffered from neck as well as back injuries, although the plaintiff testified during trial that she did not experience any neck pain or injury. Furthermore, the plaintiff testified that despite her restricted range of motion, she still engaged in many activities such as bowling and tennis, and any pain would resolve after performing the prescribed exercises and using an anti-inflammatory medication.

In light of the contested nature of the plaintiff's damages, the intent of the jury was not unclear. The jury, as the trier of fact, was free to accept or reject the testimony offered by either party. *Froom Development Corp.* v. *Developers Realty, Inc.*, supra, 114 Conn. App. 635. It is the jury's task to determine the credibility of the evidence, and as such "[t]he jury was not compelled to accept the plaintiff's claims as to the severity of her injuries, no matter how persuasive that evidence might have seemed to the trial court." (Internal quotation marks omitted.) *Smith* v. *Lefebre*, 92 Conn. App. 417, 426–27, 885 A.2d 1232 (2005). The jury reasonably could have concluded that the plaintiff did not sufficiently establish the amount of damages she incurred as a result of the decedent's negligence.

Furthermore, as in *Hughes*, the jury in the present case was provided statutory bases for finding liability and was charged accordingly regarding the plaintiff's claims of negligence per se. *Hughes* v. *Lamay*, supra, 89 Conn. App. 386. Here, the court specifically instructed that pursuant to the doctrine of negligence per se, "[a statute] provides a minimum standard of conduct for operators of motor vehicles. In Connecticut, the violation of a statute relating to the operation of a motor vehicle is negligence per se or negligence as a matter of law. . . . [I]f you find that the [decedent] violated one of the statutes cited in this case, then you *must* find him negligent." (Emphasis added.) The jury also heard evidence that the decedent "darted forward" in violation of a stop sign. If the jury concluded that the decedent violated the relevant statute, it properly returned a plaintiff's verdict. Although the return of a plaintiff's verdict establishes a technical legal injury, thereby entitling the plaintiff to nominal damages, this court has held that we will not reverse a judgment and grant a new trial for a jury's mere failure to award nominal damages in such circumstances. *Hughes* v. *Lamay*, supra, 386 n.7. In light of the contested nature of the plaintiff's claimed injuries and damages, the jury could have found the defendant liable pursuant to the doctrine of negligence per se and reasonably could have awarded zero damages. Accordingly, we conclude that the jury's award of zero damages in this case was not inherently ambiguous.

The plaintiff's assertion that the verdict was contrary to the law and evidence is equally unconvincing. As we have previously stated in this opinion, the jury had evidence before it that the plaintiff suffered minor injuries (i.e. burns and abrasions) that resolved shortly after the accident; that the plaintiff had reported to her doctor on two prior occasions that her lower back symptoms had resolved; that when the plaintiff's symptoms

returned they would again resolve when she performed the prescribed exercises and took anti-inflammatory medication; that the plaintiff still participated in various desired activities; and that the plaintiff had given inconsistent statements regarding the nature and extent of her injuries. "[T]he determination of the amount of damages to be awarded, if any, is solely the jury's function." (Internal quotation marks omitted.) *Santa Maria* v. *Klevecz*, 70 Conn. App. 10, 17, 800 A.2d 1186 (2002). Accordingly, we cannot say that the jury's award of zero damages was contrary to the law and evidence. We therefore conclude that the trial court did not abuse is discretion in denying the plaintiff's motion to set aside the verdict.[7]

II

The plaintiff finally asserts that the court erred in failing to set aside the verdict because it (1) shocked the conscience, was wholly inadequate and manifestly unjust and (2) was governed by mistake, ignorance, prejudice, corruption or partiality. We conclude that these claims are without merit.

Our standard of review is well settled. "[I]t is the court's duty to set aside the verdict when it finds that it does manifest injustice, and is . . . palpably against the evidence. . . . The only practical test to apply to a verdict is whether the award of damages falls somewhere within the necessarily uncertain limits of fair and reasonable compensation in the particular case, or whether the verdict so shocks the sense of justice as to compel the conclusion that the jury [was] influenced

---

[7] We conclude that the plaintiff's assertion that the trial court improperly articulated a new test for determining whether an award is inherently ambiguous is without merit. The court did not articulate a new test, but rather synthesized the principles of diverging jurisprudence on this particular issue. Moreover, the court properly applied the appropriate case specific analysis set forth by our Supreme Court in *Wichers* v. *Hatch*, 252 Conn. 174, 181, 745 A.2d 789 (2000).

by partiality, mistake or corruption. . . . [A] court's decision to set aside a verdict . . . is entitled to great weight and every reasonable presumption should be given in favor of its correctness. . . . In determining whether the court abused its discretion, therefore, we decide only whether, on the evidence presented, the court reasonably could have decided that the jury did not fairly reach the verdict it did. To do so, we must examine the evidential basis of the verdict itself . . . .

"Although the court has broad discretion in setting aside a verdict, its discretion is not boundless. . . . Upon issues regarding which, on the evidence, there is room for reasonable difference of opinion among fair-minded men, the conclusion of a jury; if one at which honest men acting fairly and intelligently might arrive reasonably, must stand, even though the opinion of the trial court and this court be that a different result should have been reached. . . . [I]f there is a reasonable basis in the evidence for the jury's verdict, unless there is a mistake in law or some other valid basis for upsetting the result other than a difference of opinion regarding the conclusions to be drawn from the evidence, the trial court should let the jury work [its] will. . . . [T]he court should not assume that the jury made a mistake, but should suppose that the jury did exactly what it intended to do." (Citations omitted; internal quotation marks omitted.) *Schettino* v. *Labarba*, 82 Conn. App. 445, 448–49, 844 A.2d 923 (2004).

The plaintiff's assertions that the verdict was so inadequate as to shock the conscience and was governed by mistake or partiality are unavailing. As previously noted, the plaintiff suffered minor burns and abrasions, which resolved shortly after the accident with no residual effects. Although the plaintiff complained of chronic back pain and limitations regarding her ability to participate in various activities, the plaintiff also testified that

her symptoms would resolve when engaging in the treatment prescribed by her physician. Moreover, the plaintiff's own testimony served as the primary source of evidence regarding her pain and limitations. Finally, in argument before the jury, the defendant pointed to several inconsistencies within the plaintiff's testimony, including those related to the nature and extent of her injuries and limitations. The jury was not required to believe the testimony of the plaintiff or her physician. See *Froom Development Corp.* v. *Developers Realty, Inc.*, supra, 114 Conn. App. 635. In light of the highly contested nature of the plaintiff's injuries, we cannot say that the trial court erred in holding that there was a reasonable basis in the evidence for the jury's verdict. See id., 632 (trial judge is uniquely situated to evaluate jury's verdict having observed witnesses and gauged tenor of trial). We therefore conclude that the court did not abuse its discretion in denying the plaintiff's motion to set aside the verdict.

The judgment is affirmed.

In this opinion the other judges concurred.