******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

*Syllabus*

The plaintiffs sought to recover damages, both individually and on behalf
of their minor child for medical malpractice from the defendants, S,
a pediatrician who performed a circumcision on the child, and the
professional corporation in which S practiced. The plaintiffs alleged
that S was negligent in performing the procedure, during which she
used a device called a Mogen clamp to perform the circumcision. The
procedure resulted in the amputation of a portion of the glans of C's
penis. During the trial, the defendants' counsel offered a video that
depicted a circumcision using the Mogen clamp in order to assist the
jury in understanding how a circumcision is performed using that device.
After excusing the jury, the court watched the video and heard arguments
as to its admissibility. The plaintiffs' attorney argued that the video
should not be shown to the jury because it was not previously produced
for the plaintiffs, because it would confuse the jury, and because the
defendants' expert, a pediatrician who testified that the video accurately
depicted a circumcision procedure and that the video would assist the
jury, did not rely on the video in forming his opinion. The court ruled
that the video was admissible as demonstrative evidence. When trial
resumed, the defendants' expert testified that the video did not depict
the actual circumcision that S performed on C. The court then permitted
the video to be shown for demonstrative purposes only. The video,
which depicted the entirety of a Mogen circumcision procedure and
had no sound, was shown to the jury, and the defendants' expert narrated
the events depicted in the video. After the trial ended, the jury returned
a verdict for the defendants, and the plaintiffs subsequently filed a
motion to set aside the verdict and for a new trial on the basis of the
court's decision to permit the showing of the video. Thereafter, the trial
court denied the plaintiffs' motion to set aside the verdict and for a new
trial, and the plaintiffs appealed to this court. *Held*:

1. This court declined to review the merits of the plaintiffs' claims that the
defendants' use of the video violated the relevant rules of practice (§§ 13-
4, 13-15) regarding disclosure of experts and the continuing duty to
disclose, because the video and related testimony from the defendants'
expert were not disclosed, and that the video and the related expert
testimony were irrelevant and unduly cumulative; the plaintiffs did not
distinctly raise those claims in connection with their motion to set aside
the verdict and for a new trial.

2. There was no merit to the plaintiffs' claim that the video, and testimony
of the defendants' expert concerning it, were prejudicial and confusing to
the jury because the portions of the video showing the patient receiving
anesthesia and the physician applying clamps used to control bleeding
were aspects of the procedure that were not at issue in the trial; it was
not apparent to this court how those parts of the video would confuse
the jury, and the court concluded that those parts of the video likely
clarified the earlier direct testimony of the plaintiffs' expert witness
regarding the use of anesthesia and the clamps; furthermore, the plain-
tiffs' claim that the video was prejudicial because they were precluded
from responding to it was unavailing, because, prior to trial, the defen-
dants provided the plaintiffs with an exhibit list that identified the video,
and the plaintiffs did not request to watch the video prior to its introduc-
tion at trial, nor did they choose to file a motion in limine seeking to
preclude its admission into evidence, move for a continuance after it
was marked for identification, or recall their expert witness to serve as
a rebuttal witness concerning the video.

3. The trial court properly rejected the plaintiffs' claim that it improperly
denied their motion to set aside the verdict and for a new trial because
the court did not instruct the jury that the video was for demonstrative
purposes only: the purpose of the video, which was to show to the jury

how a circumcision is performed utilizing a Mogen clamp, would have been readily apparent to the jury; moreover, the plaintiffs having failed to comply with the prerequisites to appellate review of their allegation of instructional impropriety because they did not raise this claim at the time the trial court instructed the jury, this court could not say that the trial court abused its discretion in denying the plaintiffs' motion.

4. This court declined to review the plaintiffs' claim, raised for the first time on appeal, that the trial court abused its discretion by allegedly discouraging the jury from rehearing the expert medical testimony during deliberation: this claim was unpreserved because the plaintiffs, at the time of trial, did not object to the manner in which the trial court responded to the jury's playback request.

Argued February 3—officially released July 18, 2017

(Appeal from Superior Court, judicial district of Fairfield, Hon. William B. Rush, judge trial referee)

*Procedural History*

Action to recover damages for the named defendant's alleged medical negligence, brought to the Superior Court in the judicial district of Fairfield and tried to the jury before *Hon. William B. Rush*, judge trial referee; verdict for the defendants; thereafter, the court denied the plaintiffs' motion to set aside the verdict and rendered judgment in accordance with the verdict, from which the plaintiffs appealed to this court; subsequently, the court, *Hon. William B. Rush*, judge trial referee, granted the plaintiffs' motion for rectification. *Affirmed.*

*Alan Scott Pickel*, with whom, on the brief, was *Anthony Cenatiempo*, for the appellants (plaintiffs).

*Michael R. McPherson*, for the appellees (defendants).

*Opinion*

KELLER, J. This appeal arises from a medical malpractice action brought by the plaintiffs, Thomas and Roxanne Mahoney, both individually and on behalf of their minor child, Teaghan Mahoney (child), against the defendants, Lori Storch Smith and Bay Street Pediatrics, the professional corporation in which Dr. Storch Smith practiced. The plaintiffs alleged that Dr. Storch Smith was negligent in performing a circumcision on the child, who was a newborn at the time. The procedure resulted in the amputation of a portion of the glans—or head—of the child's penis. Following a trial, the jury returned a verdict for the defendants. On appeal, the plaintiffs claim that the trial court abused its discretion by (1) declining to set aside the verdict and order a new trial, and (2) discouraging the jury from rehearing expert medical testimony during deliberations. We disagree with the plaintiffs and, accordingly, affirm the judgment of the court. Additional facts will be provided within the context of each of the plaintiffs' claims.

## I

The plaintiffs' first claim is that the court abused its discretion by declining to set aside the verdict and order a new trial. We disagree.

The following facts, as could reasonably have been found by the jury, are pertinent to this claim. Dr. Storch Smith, a pediatrician, performed the circumcision at Norwalk Hospital on December 29, 2010. She used a device known as a Mogen clamp to perform the procedure. The Mogen clamp is one of several medical devices commonly used to circumcise newborns. It is designed to clamp, and therefore isolate, the patient's foreskin above the glans, after which the foreskin is excised using a scalpel. In the present case, Dr. Storch Smith applied the Mogen clamp and excised what she thought was solely the child's foreskin. After observing that the procedure produced an unusually large amount of blood, however, she opened the excised foreskin and observed, in her words, a "small piece" of glans. The child, along with the amputated portion of the glans, was thereafter transported to Yale-New Haven Hospital for treatment by a pediatric urologist. That same day, the pediatric urologist successfully reattached the amputated portion of the glans.

Trial commenced on April 15, 2015, and consisted largely of expert medical testimony concerning the standard of care for performing circumcisions using the Mogen clamp. During direct examination of the defendants' expert, Scott Siege, a pediatrician, the following exchange occurred:

"[The Defendants' Counsel]: . . . Did you also, doctor, at my request, review a video that depicts a circumcision procedure being performed with a Mogen clamp?

"[Siege]: Yes. . . .

"[The Defendants' Counsel]: Doctor, what did the video, that you reviewed at my request, depict?

"[Siege]: It depicted a circumcision using the Mogen clamp . . . that held to the standard of care for a Mogen circumcision.

"[The Defendants' Counsel]: . . . In your experience, having read the depositions of all the witnesses in the case, is it difficult to explain the details of the procedure without any visual frame of reference? . . .

"[Siege]: Yes, it is very difficult.

"[The Defendants' Counsel]: All right. And would the video, in your opinion, assist the jury in understanding how a circumcision is performed using a Mogen clamp?

"[Siege]: Yes.

"[The Defendants' Counsel]: Your Honor, I offer the video."

After excusing the jury, the court watched the video and heard arguments as to its admissibility. The plaintiffs' attorney argued that the video should not be shown to the jury because it was not previously produced for the plaintiffs, it would confuse the jury, and Dr. Siege did not rely on it in forming his expert opinion. The court ruled that the video was admissible as demonstrative evidence.[1] When the jury returned and the defendants' attorney resumed direct examination, Dr. Siege confirmed that the video did not depict the actual circumcision that Dr. Storch Smith performed on the child. The defendants then offered the video "for demonstrative purposes only," which the court permitted.

The video, which the defendants' attorney indicated was found on the Internet, was approximately two and one-half minutes in duration. It had no sound. Its title, "The Pollock Technique," was displayed in a corner of the video screen. The video depicted an unidentified individual performing the entirety of a Mogen circumcision on a newborn, including the application of local anesthesia to the patient's penis, as well as the use of hemostats (clamps typically used to control bleeding) to assist in applying the Mogen clamp to the patient's foreskin. While the video played for the jury, Dr. Siege narrated the events depicted therein.

Because the video was not admitted as a full exhibit, the jury did not have access to it during its deliberations. After the jury returned its verdict, the plaintiffs filed a motion to set aside the verdict and for a new trial (postverdict motion) on the basis of the court's decision to permit the showing of the video. See Practice Book § 16-35. By way of a memorandum of decision dated July 10, 2015, the court denied that motion, precipitating this claim on appeal.

We review the court's denial of the postverdict motion for abuse of discretion. See, e.g., *Hall* v. *Bergman*, 296 Conn. 169, 179, 994 A.2d 666 (2010); *Hughes* v. *Lamay*, 89 Conn. App. 378, 383, 873 A.2d 1055, cert. denied, 275 Conn. 922, 883 A.2d 1244 (2005). "In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only [when] an abuse of discretion is manifest or [when] injustice appears to have been done." (Internal quotation marks omitted.) *Hall* v. *Bergman*, supra, 179.

"[T]he role of the trial court on a motion to set aside the jury's verdict is . . . to decide whether, viewing the evidence in the light most favorable to the prevailing party, the jury could reasonably have reached the verdict that it did." (Internal quotation marks omitted.) Id. Additionally, "[a trial court may] set aside a verdict where it finds it has made, in its instructions, rulings on evidence, or otherwise in the course of the trial, a palpable error which was harmful to the proper disposition of the case and probably brought about a different result in the verdict." (Internal quotation marks omitted.) *Bovat* v. *Waterbury*, 258 Conn. 574, 583, 783 A.2d 1001 (2001).

In claiming that the court abused its discretion by denying the postverdict motion, the plaintiffs make three distinct arguments. We address each in turn.

### A

The plaintiffs first argue that the defendants' use of the video violated expert disclosure rules under Practice Book § 13-4, and the continuing duty to disclose under Practice Book § 13-5, because the video and related testimony from Dr. Siege were not disclosed pursuant to those provisions. The plaintiffs, however, did not distinctly raise this argument in connection with their postverdict motion. Accordingly, we decline to review the merits of this argument. See *AvalonBay Communities, Inc.* v. *Zoning Commission*, 130 Conn. App. 36, 62 n.24, 21 A.3d 926, cert. denied, 303 Conn. 909, 32 A.3d 962 (2011).

### B

The plaintiffs next argue that the video, and Dr. Siege's testimony concerning it, were irrelevant, as well as unduly cumulative, prejudicial, and confusing to the jury. See Conn. Code Evid. §§ 4-2 and 4-3.

The plaintiffs' attorney did not argue in connection with the postverdict motion that the video was irrelevant or cumulative. We therefore decline to reach the merits of these aspects of the present claim. See *State* v. *McCall*, 187 Conn. 73, 84, 444 A.2d 896 (1982).

Although we conclude that the plaintiffs preserved their arguments that the video and Dr. Siege's attendant

testimony were unduly confusing and prejudicial by asserting these grounds in their postverdict motion, those arguments are without merit. The plaintiffs contend that the portions of the video showing the patient receiving anesthesia and the physician applying hemostats to the patient's foreskin were confusing to the jury because those aspects of the procedure were not at issue in the trial. It is not apparent to us how those parts of the video would confuse the jury. If anything, they likely clarified the earlier direct testimony of the plaintiffs' expert witness, David Weiss, a pediatrician, who stated during an in-court demonstration of the Mogen clamp: "[B]efore you do the circumcision you'll anesthetize the baby and you'll take some hemostat[s] . . . . And you can take a piece of the [foreskin] . . . you will take the hemostats and pull [the foreskin] through [the Mogen clamp] . . . ."

The plaintiffs further argue that the video was prejudicial because "they were in essence precluded from responding to it with their own video or expert." This argument is unavailing. As with all of the other evidence, the defendants marked the video for identification prior to trial. An exhibit list identifying the video as a "[v]ideo demonstrating circumcision procedure" was provided to the plaintiffs prior to trial as well. The plaintiffs could have asked to watch the video prior to its introduction at trial, but did not do so; nor did they file a motion in limine seeking to preclude its admission into evidence, move for a continuance after it was marked for identification, or recall Dr. Weiss to serve as a rebuttal witness concerning the video.

C

Finally, the plaintiffs contend that the court improperly denied their postverdict motion in light of the fact that it did not instruct the jury that the video was for demonstrative purposes only. The plaintiffs made only brief reference to this issue in their memorandum in support of the postverdict motion, asserting that "[p]rior to the offering of the video, there was no instruction given to the jury relative [to its] use and consideration of the video . . . ." Although the court did not address this ground in its memorandum of decision denying the motion, it determined that the video "was not an attempt to reenact the activities of [Dr. Storch Smith] at the time of the circumcision and primarily portrayed to the jury how a circumcision is performed utilizing a Mogen clamp." Because we agree with the court's observation and that the purpose of the video would have been readily apparent to the jury, we conclude that the court properly rejected the plaintiffs' argument on this ground. We further observe that the plaintiffs did not raise this issue when the court instructed the jury; thus, "[i]n the face of the [plaintiffs'] noncompliance with the prerequisites to appellate review of [their] allegation of instructional impropriety,

we cannot say that the court abused its discretion in denying the motion to set aside the verdict." *Lewis* v. *Drew*, 132 Conn. App. 306, 314, 31 A.3d 448 (2011).

For all of the foregoing reasons, we reject the plaintiffs' claim.

## II

Second, the plaintiffs claim that the court abused its discretion by allegedly discouraging the jury from rehearing the expert medical testimony during deliberation. Because this claim is unpreserved, we decline to reach its merits.

The following facts are relevant to this claim. As previously mentioned in part I of this opinion, at trial, the plaintiffs and the defendants presented the expert testimony, respectively, of Dr. Weiss and Dr. Siege. During its deliberations, the jury sent the court a note that read in part as follows: "Can we please view the testimony of [Dr. Weiss] . . . . [and] can we please view the testimony of [Dr. Siege]?" The court responded to the jury in part: "We only have a transcript; it's not a videotape. So we're talking about [a] transcript of it. As to those two [physicians], I've conferred with counsel. They believe that each of the [physician's testimony] will last about a half a day; it will take about an entire day to read the entire testimony. If that's what you want, that's what we'll give you. If there's something more specific you're interested in, we'll be glad to consider whether we can do that in a shorter period of time, but we don't know. I'm not forcing you to do anything. If that's what you want, you'll get the testimony . . . . So what I'm going to ask you to do is to go back in, discuss what you want to do about Dr. Weiss' testimony and Dr. Siege's testimony."

The jury returned to its deliberations, after which it sent the court another note. The new note read: "If we ask for testimony, is it read in court or is it transcribed and made available to the jury in deliberations?" The court responded: "[I]t will be played back via the [court] monitor. So I'll send you back in. We're prepared to do whatever you want." Ultimately, the jury did not request that the testimony be replayed.

The plaintiffs argue on appeal that "rather than comply with Practice Book § 16-27, which mandates that the jury be provided with the [expert] testimony, the court . . . took steps to discourage [it] from getting [its] request met." The plaintiffs, however, did not object at the time to the manner in which the court responded to the jury's playback request at trial. "For us [t]o review [a] claim, which has been articulated for the first time on appeal and not before the trial court, would result in a trial by ambuscade of the trial judge." (Internal quotation marks omitted.) *Ravetto* v. *Triton Thalassic Technologies, Inc.*, 285 Conn. 716, 730, 941 A.2d 309 (2008). We therefore decline to review the

merits of this claim.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] "[D]emonstrative evidence is not part of the incident and is offered to illustrate other evidence, either real or testimonial. Demonstrative evidence is a pictorial or representational communication incorporated into a witness's testimony." C. Tait & E. Prescott, Connecticut Evidence (4th Ed. 2008) § 11.1, p. 656.